ABELS and others *vs.* McKEEN and GARRISON.

1. The contributors to a fund, raised and placed in the hands of trustees for a specific purpose, have a right to have any surplus not needed for the object, repaid to them, in proportion to their contributions. The claim is founded in equity, and will be enforced in this court.

2. The fund is in the control of the association, only for the purposes for which it was raised. It may be disposed of for any purpose within the object for which it was contributed, at any regular meeting of the association, by the voice of the majority of the members present, even if a minority of the whole number.

3. But the vote must be for some purpose for which the money was contributed. A majority cannot devote the money of the minority, or even of a single member, to any other purpose, without his consent.

4. So, surplus funds, contributed for enlisting men to fill the quota of a city or ward under a call of the President, and to clear the contributors from draft, cannot, by a vote of the majority, be donated to a charitable institution, without the consent of the minority.

5. All persons present at the meeting at which the vote is taken disposing of the fund, if no one dissents, are considered as voting with the majority for the motion, and assenting thereto; their right to the fund is concluded. *Aliter*, as to those not present.

6. Where, under a resolution of the majority, the surplus fund has passed into the hands of new trustees, between whom and the original contributors there is no priority, such trustees are not accountable to them for the fund; their remedy is against the original trustees only.

*Mr. J. M. Scovel*, for complainants.

*Mr. Browning*, for defendants.

THE CHANCELLOR.

This suit is brought by Abels, Nichuals, Ross, Murphy, Williams, Muldoon, Smoker, Paul, and Curlis, nine of the contributors to a fund raised by voluntary contribution, to free the north ward of the city of Camden from a draft, in the late rebellion. It is brought for themselves, and all of their associates, who should come in and contribute to the expenses of the suit. It is brought against the defendants

McKeen and Garrison, to whom the excess of the fund raised by voluntary contribution, above the amount expended for the purpose for which it was raised, had been paid over by Vogel, the paymaster of the association.

In February, 1865, of the quota of sixty-six men allotted to the north ward of the city of Camden, on the call of President Lincoln, made in December previous, for three hundred thousand men, there remained fifty-six to be furnished. The quota had been sixty-two, and, according to the regulations, one hundred and twenty-six had been drafted to supply the deficiency. On the twenty-fifth of that month, a meeting was called at Hill's tavern, in that ward, to raise money for enlisting men to fill the quota, and release the men who had been drafted. They organized themselves into a society, and were called "the drafted men's association of north ward." A written article was drawn, to be subscribed, by which the subscribers agreed to pay the sums affixed to their names, for the purpose of filling the quota of north ward, in the city of Camden, under the last draft, and to exempt the drafted men ; to be paid to Jesse Townsend, treasurer. This was dated February twenty-fifth, 1865, and was signed by thirty-one persons, among whom were the complainants, Nichuals, Muldoon, Paul, and Murphy. Others who did not subscribe to this agreement, contributed to the funds. The contributors were one hundred and eight in all, of whom seventy-nine were drafted men, and twenty-nine men not drafted. The amount contributed was $8423, of which $7326 was contributed by the drafted men, and $1097 by others. Of this amount, $3956.96 remained unexpended at the close of the war, after the quota had been filled, and when all danger of further draft had passed. This sum was paid by Vogel, the paymaster, to the defendants.

The association had its permanent president, treasurer, and secretary, and held its meetings at Hill's tavern, upon adjournment, and upon call, from February twenty-fifth until some time in June. At a meeting held on the seventh of March, a resolution was passed, without dissent, that after

the number of men necessary to clear the contributors from that draft had been procured, if there was any overplus of the fund unexpended, it should be paid into the hands of the defendants, as the nucleus of a fund to release the ward from any future draft; and in case the war should cease, and there be no further draft, it should then be donated to some charitable institution of the city. On the sixth of April, 1865, Vogel, the paymaster, in whose hands the surplus was, on the faith of that resolution paid it over to the defendants, taking their receipt annexed to a copy of the resolution.

The defendants have appropriated this surplus to establish a city dispensary, which they claim that they were directed and authorized to do, by a vote of the association, at a meeting held on the sixth of April. The fact of such vote is disputed; the evidence is conflicting on the point, and the decided weight of evidence is against the fact that such vote was had.

The complainants named in the bill, are the only persons who can have the benefit of this suit. Whether, if any of their associates had offered to come in, make themselves parties, and contribute to the suit, they could have been admitted so to do, it is not necessary to decide, as none of them have been made parties, or applied for that purpose.

The claim of the complainants, that the contributors to a fund raised and placed in the hands of trustees for a specific purpose, have a right to have any surplus not needed for the object, repaid to them in proportion to their contributions, is a just claim, founded in equity, and will be enforced by this court.

The first question is, what power the meetings of the association had over this fund by vote of the majority of those present, and what effect the vote of March seventh had upon its application.

The fund, from the manner of its being raised and the organization of the association previous to its being raised, I think, was intended to be placed in the control of the association, for the purposes for which it was raised. That associa-

tion, being without constitution or by-laws, from the necessity of the case must be held to have power to act at any regular meeting, by the voice of a majority of the members present. If, at such meeting, the fund had been disposed of for any purpose within the object for which it was raised, although it was by a bare majority of a meeting of a minority of the members, it would be binding on all the members. As in all partnerships or corporations, without articles, or charter, or by-laws, regulating it, a majority governs ; so, in an association governed by popular vote, in analogy to the established rule at popular elections, the control is in the majority of those who attend to their duty and exercise their right ; those voluntarily absenting themselves, are held as agreeing to the vote of the majority of the attending members or voters.

But as in partnerships and corporations the majority can only govern within the object for which the partnership or corporation was formed ; so here, that vote must be for some purpose for which the money was subscribed or contributed. That purpose was to free the north ward from draft, and the money of no contributor could be used for any other purpose, without his consent. A majority could not devote the money of the minority to establish a city dispensary, any more than they could have appropriated it to enlist men for the confederate army. Ninety-nine out of a hundred could not so apply the funds of the remaining one.

But five of the nine complainants, to wit, Muldoon, Paul, Nichuals, Murphy, and Smoker, were present at the meeting of March seventh. At such a meeting, if a vote is taken, and no one dissents, all who do not vote are considered as voting with the majority for the motion. And a vote of three ayes at a meeting of twenty, where no one dissents, is considered as the affirmative vote of all present. These five complainants, having thus assented to the payment of this money to the defendants, *to be donated* to a charity, have voluntarily abandoned all right to recover it themselves. Whether this resolution gave to the defendants the right to

select the charity, is another question, which is not raised in this suit.

But this vote did not bind the four other complainants who were not present. Their right to the surplus of their contribution remains. The difficulty in the way of their recovering is of another kind, but is founded on the fact that they are not bound by the vote of March seventh. If they had authorized their treasurer, or paymaster, to pay their money to the defendants, and the defendants had accepted it upon that vote, it would have constituted them the agents of these complainants, and given them a right to call upon the defendants to appropriate this money rightly. But as it is, the defendants have no privity with these complainants. The assets they received were not the property or goods of these complainants, but money or assets which had never been theirs, handed over by Vogel, the treasurer of the association, under a vote of the association. If any one is accountable to them, it is Vogel, who handed over funds without authority from them, when he ought to have accounted to them for these funds. How far Vogel would be protected by such inference of acquiescence in the resolution of the majority as might be had from their silence for thirty days, will be settled if a suit is brought against him.

As against these defendants, the bill must be dismissed.