542

(No. 55989.—

McHENRY STATE BANK *et al.,* Appellants, v. WILLIAM
C. HARRIS, Commissioner of Banks and Trust Companies, *et al.,* Appellees.

*Opinion filed April 16, 1982.*

SIMON, J., specially concurring.

Sheldon Karon, Victor G. Savikas, David R. Melton,
and Miriam Farkas, of Karon, Morrison & Savikas, Ltd.,
of Chicago, and Paul E. Presney, of Presney, Huffman,

Kelly & Appelton, of Springfield, for appellants.

Tyrone C. Fahner, Attorney General, of Springfield, and Charles A. Bane, and Julian C. D'Esposito, Jr., Special Assistant Attorneys General, of Isham, Lincoln & Beale, of Chicago, of counsel, for appellee Commissioner of Banks.

Harvey B. Stephens and Mark H. Ferguson, of Brown, Hay & Stephens, of Springfield, and Ray H. Greenblatt, Wayne W. Whalen, and James K. Genden, of Mayer, Brown & Platt, of Chicago, for intervenor-appellee Association For Modern Banking in Illinois.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, McHenry State Bank, First National Bank of Lacon, State Bank of Arthur, and Marquette National Bank, appealed from the judgment of the circuit court of Sangamon County entered in favor of defendant, William C. Harris, Commissioner of Banks and Trust Companies (hereinafter Commissioner), dismissing with prejudice plaintiffs' action for declaratory judgment and injunctive relief. We allowed plaintiffs' motion filed pursuant to Supreme Court Rule 302(b) (73 Ill. 2d R. 302(b)), and the cause was transferred to this court.

In their complaint, as amended, plaintiffs sought a declaratory judgment that Public Act 82—21 (Pub. Act 82—21, approved July 3, 1981, effective January 1, 1982; hereinafter the Act), which amended portions of the Bank Holding Company Act of 1957 (Ill. Rev. Stat. 1979, ch. 16½, par. 71 *et seq.*; now found in Ill. Ann. Stat., ch. 17, par. 2501 *et seq.* (Smith-Hurd 1981)) and the Illinois Banking Act (Ill. Rev. Stat. 1979, ch. 16½, par. 101 *et seq.*; now found in Ill. Ann. Stat., ch. 17, par. 301 *et seq.* (Smith-Hurd 1981)), was unconstitutional and also to enjoin the defendant commissioner from taking any action under the amended provisions. The Association for

Modern Banking in Illinois, an Illinois not-for-profit corporation sought and was granted leave to intervene as a party defendant. Both the defendant commissioner and the intervenor defendant moved to strike the amended complaint and dismiss the action with prejudice. The complaint attacked the statute on the same grounds which are argued in this appeal, and they will be discussed to the extent necessary to this opinion. The circuit court held the statute constitutional, and upon allowance of the motions dismissed the action with prejudice.

Plaintiffs contend that the Act permits branch banking in two ways: first, that the community service facilities authorized therein are branch banks and, second, that branch banking is made possible through the multibank holding companies provided for in the Act. They argue that because the effect of the Act is to authorize branch banking it is invalid for the reason that it failed to receive the three-fifths majority in each house of the General Assembly required by article XIII, section 8, of the Illinois Constitution, which provides:

"Branch banking shall be authorized only by law approved by three-fifths of the members voting on the question or a majority of the members elected, whichever is greater, in each house of the General Assembly." Ill. Const. 1970, art. XIII, sec. 8.

They contend, too, that in enacting the Act "the General Assembly has unconstitutionally delegated its legislative authority to Congress and the Federal Reserve Board in violation of article IV, section 1 of the Illinois Constitution." They argue that the Act unconstitutionally delegates to the Federal Reserve Board the power to define branch banking and that it also automatically incorporates into the Act all future amendments to the Federal Bank Holding Company Act (12 U.S.C. sec. 1841 *et seq.* (1976)).

The circuit court held that the Act "does not in any

respect authorize branch banking either by authorizing multi-bank holding companies or by permitting the establishment and operation of community service facilities"; that passage of the Act did not "require the extraordinary majority vote necessary to authorize branch banking under article XIII, section 8 of the Illinois Constitution"; and that the Act "was approved by three-fifths of the members voting on the question and by a majority of the members elected in each house of the General Assembly."

We consider first the question whether the Act authorizes branch banking within the contemplation of article XIII, section 8, of the Constitution. The Act amended section 5 of the Illinois Banking Act (Ill. Rev. Stat. 1979, ch. 16½, par. 105; now found in Ill. Ann. Stat., ch. 17, par. 311 (Smith-Hurd 1981)), and plaintiffs contend that subparagraph 19 of section 5, which authorizes the establishment of community service facilities, permits branch banking. Section 5, in pertinent part, provides:

"Sec. 5. *** A bank organized under this Act *** shall *** have *** the following additional *** powers:

* * *

(19) To establish and maintain not more than one community service facility, provided such facility complies with the following provisions:

(a) Any community service facility may be established within or outside of the county in which the main banking premises of the maintaining bank is located, provided that, if established outside of the county, any such community service facility may be no more than 10 miles from the main banking premises of the maintaining bank.

(b) The provisions of subparagraph (c), (d) and (f) of paragraph 15 of this Section are applicable to each community service facility established under this paragraph 19.

(c) No community service facility shall be closer than one mile to any then existing main banking premises of another bank unless:

(i) it is closer to the maintaining bank than to main banking premises of such other banking house, or

(ii) it is established with the irrevocable consent of such other bank, or

(iii) it is established and maintained by a bank which is located in a city of 500,000 or more inhabitants and at least some part of the main banking premises of each of 4 or more banks, including the bank proposing to maintain the community service facility, are located within the area of a circle having a radius of 1500 feet from the maintaining bank, in which case the maintaining bank may establish a community service facility anywhere in such circle, but not closer than 600 feet from the main banking premises of any bank whose main banking premises are outside of such circle without the irrevocable consent of such other bank; and provided that in any case where a community service facility is established pursuant to this subparagraph (iii) closer than 600 feet to the main banking premises of another bank, no other bank whose main banking premises are within such circle shall be required to obtain the consent of the maintaining bank in establishing a community service facility closer to it than 600 feet.

(d) No community service facility shall be closer than 2 miles to any then existing main banking premises of another bank whose main banking premises are located in a municipality of 10,000 or fewer inhabitants (according to the 1980 census) in which the main banking premises of 3 or more banks are located on the effective date of this amendatory Act enacted by the 82nd General Assembly, if:

(i) such community service facility is established by a bank controlled by a bank holding company whose banking region is not the same banking region as the banking region

in which the municipality described in this subparagraph (d) is located; and

(ii) such community service facility is established within 7 years of the effective date of this amendatory Act enacted by the 82nd General Assembly.

As used in this subparagraph (d), 'bank holding company' and 'banking region' have the meanings as established in Sections 2 and 3.01 of The Illinois Bank Holding Company Act of 1957.

If a majority of the banks whose main banking premises are located in a municipality described in this subparagraph (d) irrevocably consent in writing to the establishment of such community service facility, the limitations of this subparagraph (d) shall not apply." Ill. Ann. Stat., ch. 17, par. 311(19) (Smith-Hurd 1981).

Plaintiffs concede that at the time of the adoption of the Constitution of 1970 section 5(15) of the Illinois Banking Act (Ill. Rev. Stat. 1969, ch. 16½, par. 105(15)) authorized the establishment of off-premises facilities which were specifically excepted from the definition of branch banks contained in section 2 of the Illinois Banking Act. They argue, however, that the expanded services authorized by the "community service facilities" fall squarely within the statutory definitions of branch banking that were in effect when article XIII, section 8, was adopted in 1970. They argue further that because under the amendment these facilities may be established anywhere in the same county as the main bank and because of the services which they may render they are branch banks under the statutory definition. They cite *People ex rel. Lignoul v. City of Chicago* (1977), 67 Ill. 2d 480, as authority for the proposition that the activities proposed to be conducted at the facilities constitute branch banking. We do not agree.

As above noted, limited-service facilities of the type provided for in the amendment effected by the Act were authorized prior to the 1970 constitutional convention.

(See Ill. Rev. Stat. 1969, ch. 16½, pars. 102, 105(15).) Senate Bill 1025, approved July 23, 1965, and adopted at the referendum election November 8, 1966, effective January 1, 1967, amended the Illinois Banking Act. It contained substantially the same definition of "branch bank" as does the amendment found in the Act. Senate Bill 1025 also provided for the establishment of facilities and permitted transaction of the same types of business as may be conducted at the facility here under consideration. A review of the proceedings of the 1970 constitutional convention persuades us that the delegates were aware of the distinction between a branch bank and the type of facility here under consideration (see 2 Record of Proceedings, Sixth Illinois Constitutional Convention 1145) and clearly did not intend that the facility be subjected to the restrictions imposed upon branch banking. In view of the history of the distinction drawn by the General Assembly and approved in the referendum, which distinction was not modified in the deliberations of the constitutional convention of 1970, we do not find persuasive plaintiffs' arguments that the activities proposed to be conducted at the facility constitute branch banking.

*People ex rel. Lignoul v. City of Chicago,* cited by plaintiffs, does not support their contention. *Lignoul* is authority only for the proposition that the city of Chicago was not authorized under its home rule powers to permit the establishment of certain banking facilities and electronic banking machines in community locations for the reason that the power to regulate banking is given exclusively to the State and did not pertain to the city's local government and affairs.

Plaintiffs contend that the General Assembly has delegated to the Federal Reserve Board the power to define branch banking. This, they contend, violates article IV, section 1 (1980), of the Constitution of 1970, which provides:

"The legislative power is vested in a General Assembly consisting of a Senate and a House of Representatives, elected by the electors from 59 Legislative Districts and 118 Representative Districts."

They argue that the amendment to section 2(d) of the Bank Holding Company Act of 1957, as amended by the Act, effects such invalid delegation. Section 2(d), to the extent here pertinent, provides:

"(d) 'Bank holding company' means any company that has control over any bank or over any company that is or becomes a bank holding company by virtue of this Act. For the purposes of this Act, a company controls or has control over a bank or company if *** (4) it directly or indirectly exercises a controlling influence over the management or policies of such bank or company that is a bank holding company and the Board of Governors of the Federal Reserve System has so determined under the Federal Bank Holding Company Act." Ill. Ann. Stat., ch. 17, par. 2502(d) (Smith-Hurd 1981).

The Act also provides that in certain situations the transferor of shares in a bank shall be deemed to be in indirect control of its transferee "unless the Board of Governors of the Federal Reserve System has determined, under the federal Bank Holding Company Act, that the transferor is not in fact capable of controlling the transferee." (Ill. Rev. Stat. 1981, ch. 17, par. 2502(d).) They argue that the effect of this legislation is to give the Federal Reserve Board "the power to make branch banking possible by delegating the power to establish the rules and define the circumstances under which subsidiaries of such holding companies will constitute *de facto* branches."

Plaintiffs' argument overlooks the fact that the Act does not purport to confer powers on the Federal Reserve Board which it does not already have under the Federal Bank Holding Company Act of 1956 (12 U.S.C. sec. 1841 *et seq.* (1976)), applicable to all bank holding companies. There is no merit to their contention that the Act suffers constitutional infirmity because it "delegates legislative

authority to Congress and the Federal Reserve Board by automatically incorporating all future amendments to the Federal Bank Holding Company Act as the law of this State." Unless and until Congress sees fit to amend the provisions of the Federal act the jurisdiction of the Federal Reserve Board will remain unaffected, and the inclusion of the provision in the Act here is a recognition of the existence of dual banking systems and concurrent Federal and State jurisdiction.

Plaintiffs cite a number of authorities from which they argue that the effect of the legislation is to permit *de facto* branch banking. (*Whitney National Bank v. Bank of New Orleans & Trust Co.* (D.C. Cir. 1963), 323 F.2d 290, *rev'd on other grounds* (1965), 379 U.S. 411, 13 L. Ed. 2d 386, 85 S. Ct. 551; *Grandview Bank & Trust Co. v. Board of Governors* (8th Cir. 1977), 550 F.2d 415, *cert. denied* (1977), 434 U.S. 821, 54 L. Ed. 2d 78, 98 S. Ct. 64; *Independent Bankers Association v. Board of Governors* (D.C. Cir. 1975), 516 F.2d 1206; *Gravois Bank v. Board of Governors* (8th Cir. 1973), 478 F.2d 546; *First National Bank v. First Bank Stock Corp.* (9th Cir. 1962), 306 F.2d 937; *In re Cleveland Trust Co.* (1974), 38 Ohio St. 2d 183, 311 N.E.2d 854.) These cases at most demonstrate that there can be abuses under the multibank holding system, but the possibility that there may be violation or misapplication of a statute does not serve to render it invalid (*Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 427).

In an *amicus* brief, the Independent Community Banks in Illinois and the Independent Bankers Association of America argue that under Federal law facilities and automatic teller machines authorized by the Act are branches. They cite statistical information to show "that the unit banking structure in Illinois has served the State economy well." We are urged "to scrutinize the issues raised herein from the broadest possible perspective." The function of

this court is to scrutinize the statute enacted by the General Assembly to determine its validity; its wisdom is not for this court to determine.

Regardless of whether the facilities and automatic teller machines would be branches under Federal law, under the provisions of 12 U.S.C. section 36(c) (1976) a national bank may establish branches only as expressly authorized to State banks within the State where the bank is situated. In view of the express limitations contained in section 36(c) and the express reservation of rights to the States contained in 12 U.S.C. section 1846 (1976) we are not persuaded that there is any necessity to abolish the distinction between branch banking and the operation of facilities such as those authorized in the Act here considered.

In view of our holding that the Act did not authorize branch banking we need not consider whether its enactment complied with the provisions of article XIII, section 8, of the Constitution of 1970.

For the reasons stated the judgment of the circuit court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, specially concurring:

Rather than tackle the difficult issue of what constitutes branch banking, an issue upon which the majority opinion sheds little light, I prefer to rest my decision on my belief that, whatever the nature of the statute in issue, it received the required three-fifths majority of the members voting on the issue.

The 1970 Illinois Constitution provides: "Branch banking shall be authorized only by law approved by three-fifths of the members voting on the question or a majority of the members elected, whichever is greater, in

each house of the General Assembly." (Ill. Const. 1970, art. XIII, sec. 8.) The measure in question received 99 "yes," 59 "no," and 12 "present" votes, with seven members not voting in the House of Representatives. It received 34 "yes," 20 "no," and three "present" votes, with two members not voting in the Senate. In issue is whether a vote of "present" should be counted in calculating the number of members "voting on the question," since if they are to be so counted, the bill did not pass either house by the required three-fifths majority.

The 1970 Illinois Constitution does not explain what is meant by "three-fifths of the members voting on the question." Perhaps the intention was to leave that determination to the legislature, since the Constitution expressly commands that "[e]ach house shall determine the rules of its proceedings ***." (Ill. Const. 1970, art. IV, sec. 6(d).) Whether one looks primarily to the intent of the constitutional convention or to the procedure adopted by the houses of the General Assembly, however, the result is the same: a vote of "present" is not a vote on the question.

The 1970 Illinois Constitution provides that a record vote, which is necessary for the passage of any law, is "a vote by yeas and nays ***." (Ill. Const. 1970, art. IV, sec. 8(c).) No mention is made of votes of "present," thus indicating that such a vote was not considered to be a true vote at all by the delegates to the constitutional convention. In fact, the parliamentary rules adopted to govern the proceedings of the constitutional convention itself specifically provide that present votes were not to be counted. Rule 72 stated:

"Votes cast as 'present' shall be recorded in the Journal as 'present,' but such votes shall not be counted in determining the required number of votes on those measures or questions needing the affirmative vote of those 'present and voting.'" 1 Record of Proceedings, Sixth Illinois Constitutional Convention 851.

This was in keeping with established practice before the adoption of the Constitution. In *Bunsen v. County Board of School Trustees* (1964), 48 Ill. App. 2d 291, the Illinois Appellate Court concluded that a vote of three "yes," two "no," and one "pass," with the president not voting, constituted a majority of those members of the seven-member county board of school trustees "voting on the measure." I see no distinction between a vote of "pass" and one of "present." Both signify an abstention from the issue. It would be unrealistic to attribute special properties to one but not the other, and neither should be treated as a vote on the question.

"Voting on the question" has been defined in other States to mean " ' "expressing the will, mind or preference." ' " (*Kellams v. Compton* (Mo. 1947), 206 S.W.2d 498, 499. Accord, *State ex rel. Travers v. McBride* (Mo. App. 1980), 607 S.W.2d 851.) In those cases, void votes were held not to be part of the total votes on the question. In *Wooley v. Sterrett* (Tex. Civ. App. 1965), 387 S.W.2d 734, the court stated that the word "vote" cannot be equated with total failure of choice; therefore, the court held that blank ballots should not be counted in tallying the total number of votes on the issue. I believe these cases are applicable here. A vote of "present," like a blank ballot, is not an expression of choice.

The major handbook on parliamentary procedure, Robert's Rules of Order, in the edition available at the time of the constitutional convention, agrees at least insofar as votes of "abstain," "present," or blank ballots are concerned. See *Rockland Woods, Inc. v. Incorporated Village of Suffern* (1973), 40 App. Div. 2d 385, 340 N.Y.S.2d 513 (interpreting Robert's Rules, 1970 edition, to mean an abstention should not be counted as a vote).

The conclusion must be that the ordinary understanding of the words "members voting on the question" did not include members voting "present." Sound rules of

construction require that the terms be given the same interpretation in the Constitution unless it can be shown that some other meaning was intended. See *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 565.

The rules of procedure in effect in the two houses of the General Assembly also appear to exclude "present" votes from the total number of votes on the question. Because the legislators did not believe the measure in question concerned branch banking, the members were not careful in determining whether a three-fifths majority had been obtained. It seems clear, nevertheless, that under the House rules, a three-fifths majority was obtained. The House adopted temporary rules on January 14, 1981. (Rules of the House of Representatives, 82d General Assembly, House Resolution 5 (Jan. 14, 1981).) No permanent rules were ever adopted. House Rule 52 states:

"A member who answers 'present' on a roll call shall be so recorded, but a vote of 'present' shall not be counted in determining the result of the roll call vote."

(Also see House of Representatives Table of Extraordinary Vote Requirements.) The plaintiff does not dispute that Rule 52 applies in this case.

The real dispute revolves around the Senate rule. The eighty-second Senate adopted no special rule with regard to "present" votes. Senate Rule 51, however, adopts Robert's Rules of Order when Senate rules are silent on a question of parliamentary procedure. (Rules of the Senate, 82d General Assembly, Senate Resolution 2 (Feb. 17, 1981).) Robert's Rules equates a vote of "present" with a vote of "abstain," stating, "If [a member] does not wish to vote, he answers *'present'* (or 'abstain')." (H. Robert, Robert's Rules of Order Newly Revised sec. 44 (S. Robert ed. 1981). It states further:

"A *two thirds* vote—when the term is unqualified—means at least two thirds of the votes cast by persons entitled to vote, excluding blanks and abstentions ***."

The same rule applies to simple majorities. H. Robert,

Robert's Rules of Order Newly Revised sec. 43 (S. Robert ed. 1981).

The plaintiff contends that the rule does not apply in this case because the required majority is qualified by the words "voting on the question." I do not agree. If anything, those words emphasize the applicability of the general rule. Thus a vote of "present" is not a vote at all for the purpose of determining the result of a vote.

Plaintiff also contends that because previous Senates have counted "present" votes in tallying the number of votes on the question, the same should be done now. During debates on branch banking measures in May of 1977 and again in May and June of 1979, the Senate President repeatedly ruled that "present" votes would be counted in determining whether a three-fifths majority of those voting on the question had been obtained. (Transcripts of 80th General Assembly Regular Session, at 50-51 (May 26, 1977); Transcripts of 81st General Assembly Regular Session, at 195 (May 25, 1979); Transcripts of 81st General Assembly Regular Session, at 166-67 (May 25, 1979); Transcripts of 81st General Assembly Regular Session, at 49 (June 30, 1979).) On one occasion, the President ruled:

> "Yes, under Article XIII, Section 8, which provides that branch banking shall be authorized only by law approved by three-fifths of the members voting on the question. We ruled in the past and I'm prepared again to rule today, that a vote Present on the question, when the bill is called, is a vote and will count in the group."

As I stated in *Rock v. Thompson* (1981), 85 Ill. 2d 410, 435 (Simon, J., concurring), "Referring to custom to apply past procedures to a new Senate imposes upon the electorate viewpoints they may have voted to replace." The procedural interpretations of a previous Senate, particularly those contradicting that Senate's written rules, should not be carried over to contravene the clear meaning of rules adopted by the present Senate.

I therefore find that the new law, whether a branch banking law or not, was properly passed.