75 A.3d 1163

MAYOR DAWN ZIMMER, COUNCIL PRESIDENT PETER CUN-
NINGHAM, COUNCILMAN RAVINDER BHALLA, COUNCIL-
WOMAN JENNIFER GIATTINO, AND COUNCILMAN DAVID
MELLO, PLAINTIFFS–RESPONDENTS, v. COUNCILWOMAN
THERESA CASTELLANO, COUNCILWOMAN ELIZABETH MA-
SON, COUNCILMAN TIMOTHY OCCHIPINTI, AND COUNCIL-
MAN MICHAEL RUSSO, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 21, 2013—Decided July 5, 2013.

Before Judges FISHER, ALVAREZ and ST. JOHN.

*Jerry H. Goldfeder* (*Stroock & Stroock & Lavan, LLP* ), of the New York bar, admitted pro hac vice, argued the cause for appellants (*Gregg F. Paster & Associates,* and *Mr. Goldfeder,* attorneys; *Steven W. Kleinman,* of counsel; *Mr. Kleinman* and *Mr. Goldfeder,* on the brief).

*William W. Northgrave* argued the cause for respondents (*McManimon, Scotland & Baumann, LLC,* attorneys; *Mr. Northgrave* and *Ted Del Guercio, III,* on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider whether the remaining members of the Hoboken Council validly replaced a resigned member. As we held in another appeal, also decided today, regarding action taken by the Newark Council to fill a vacancy, *Booker v. Rice*, 431 *N.J.Super.* 548, 71 *A.*3d 206, 2013 *WL* 3357614 (App.Div.2013), in this context abstentions may not be counted as "no" votes. We reach that conclusion based on an interpretation of *Robert's Rules of Order* because, unlike the Newark Council, which has a specific rule of procedure that governed the question, *Booker, supra,* 431 *N.J.Super.* at 552–53, 71 *A.*3d 206, Hoboken's rules of procedure require resort to that treatise. Because the trial judge misinterpreted the abstentions that occurred here, and for other reasons as well, we reverse the order under review.

Pursuant to the Faulkner Act, *N.J.S.A.* 40:69A–1 to –210, Hoboken maintains a mayor-council form of government, with nine council members and a mayor. On September 19, 2012, Hoboken Councilmember Carol Marsh tendered her resignation. On October 3, 2012, the effective date of the resignation, the Council held its regularly scheduled meeting with seven of the eight remaining members in attendance. James Doyle was nominated to fill the vacancy. Four councilmembers voted "yes" to seating Mr. Doyle,[1] two voted "no,"[2] and one abstained[3]; the eighth remaining member was absent.[4] Those who voted in favor of Mr. Doyle took the position that the abstention of one councilmember and the absence of another should be considered "no" votes, thus producing—in their view—a four-four tie that permitted Mayor Dawn Zimmer to

[1] Council President Peter Cunningham, and Councilmembers Bhalla, Giattino and Mello.

[2] Councilmembers Castellano and Occhipinti.

[3] Councilmember Russo.

[4] Councilmember Mason.

utilize her statutory power, *N.J.S.A.* 40A:16–8, to break the deadlock. Mayor Zimmer voted for Mr. Doyle.

For reasons not entirely clear—nor presently relevant—the Council again voted regarding the vacant seat at the next Council meeting on October 17, 2012. The voting was similar, except that the member absent from the October 3 meeting was present and abstained, and the member who abstained at the October 3 meeting was absent. Again, those who voted in favor of Mr. Doyle took the position that this created a four-four tie, and Mayor Zimmer again voted in favor of Mr. Doyle.

On October 22, 2012, the councilmembers who either voted "no," abstained, or were absent (hereafter "the Castellano group"), filed a verified complaint in the Law Division contesting the validity of Mr. Doyle's appointment and demanding judgment declaring that the seat remain vacant. The following week, Superstorm Sandy intervened and delayed the trial judge's consideration of the matter. On November 16, 2012, the judge conducted a hearing and, at its conclusion, held that neither the October 3 nor the October 17 votes resulted in a tie and, consequently, Mayor Zimmer was not authorized to cast a vote on those occasions. The November 27, 2012 memorializing order was not appealed.

Instead, on November 20, 2012, prior to the judge's entry of a final order in the first action, Mayor Zimmer and those councilmembers who had voted in favor of Mr. Doyle (hereafter "the Zimmer group") commenced this action and obtained an order that required the Castellano group to show cause: (1) why all remaining councilmembers should not appear at a regular or special meeting to consider filling the vacancy; (2) why the thirty-day limit on the filling of vacancies contained in *N.J.S.A.* 40A:16–12 should not be tolled; and (3) why an abstention should not be counted as a negative vote.

After hearing argument on December 14, 2012, the judge decided to toll the thirty-day statutory deadline and directed all remaining councilmembers to appear at a meeting scheduled to occur on December 19, 2012, for the purpose of re-voting on Mr. Doyle's

candidacy. We denied the Castellano group's motion for leave to appeal.

The Council met on January 16, 2013, 105 days after the vacancy was created. All eight remaining members appeared; the same four voted in Mr. Doyle's favor, Councilmembers Castellano and Occhipinti voted against, and Councilmembers Mason and Russo abstained. Again, the four "yes" voters viewed this as creating a four-four tie, and Mayor Zimmer voted in favor of Mr. Doyle. The trial judge determined, by written opinion dated February 1, 2013, that the two abstentions were to be treated as negative votes, thus creating a tie that permitted Mayor Zimmer to vote.

The Castellano group filed this appeal and applied for an emergent stay, which we granted, restraining Doyle from taking office.

▪▪▪ As we held in the companion case, when a vacancy occurs, the remaining councilmembers are not required by law to fill a vacancy. *Booker, supra,* 431 *N.J.Super.* at 551, 71 *A.*3d 206. *N.J.S.A.* 40A:16–12 only declares that the governing body "may" fill a vacancy and only "within 30 days of the occurrence of the vacancy." And, like the companion case, four affirmative votes were insufficient because *N.J.S.A.* 40A:16–7 requires that the vacancy be filled by a majority of the remaining councilmembers. Without a fifth affirmative vote from the remaining councilmembers, the Council could not fill the vacancy created by Ms. Marsh's departure. And, without a tie and Mayor Zimmer's "yes" vote, there could be no fifth vote in Mr. Doyle's favor. Because the Council failed to fill the vacancy within thirty days of its occurrence, we reverse. Unlike the companion case, this case presents different and somewhat peculiar issues.

First, the trial judge found that because a member was absent, the Council's attempts on October 3 and 17 to seat Doyle were invalid. The Zimmer group did not appeal that disposition, choosing instead to commence a new action. As a result, the trial

judge's invalidation of the action taken by the Council on October 3 and 17 to fill the vacancy is not before us; that disposition is binding on the parties. That disposition, in fact, ended the controversy because those were the Council's only attempts to fill the vacancy within the statutory thirty-day window, *N.J.S.A.* 40A:16–12.

The Zimmer group forcefully argues that Chief Justice Rabner's November 9, 2012 order extending filing dates and other time limits caused by court closings in the wake of Superstorm Sandy, which struck this State with disastrous effect on October 29, 2012, served to extend the thirty-day statutory window. That is an issue we need not decide because that order, at the most, only tolled the expiration of the thirty-day window for the days between October 29 and November 16, 2012.[5] By October 29, the day of the storm, twenty-six days for filling the vacancy had elapsed; the four days left in the thirty-day statutory window—if we assume the Chief Justice's order expanded this window—expired on November 20, 2012. We recognize that the Zimmer group filed this lawsuit on that thirtieth day, but no order was sought or entered at that time expanding the thirty days,[6] and,

---

[5] The Zimmer group's argument regarding the reach of the Chief Justice's order is of dubious merit. The order, as well as the prior orders regarding Superstorm Sandy that were superseded, only transformed the days from October 29 through November 16, 2012, into "legal holidays . . . in the computation of time periods under the Rules of Court and under any statute of limitations." *N.J.S.A.* 40A:16–12 creates a time period that appears not to fall within the scope of the Chief Justice's order. The thirty-day statutory window in question does not qualify as a time period falling "under the Rules of Court" nor does it seem likely that it constitutes a "statute of limitation." Although the separation-of-powers principles contained in our Constitution likely do not empower the Chief Justice to expand, even in such an extraordinary emergency, the time within which other branches of government or their subdivisions may conduct their business, it is sufficient for our purposes to recognize that the Chief Justice's order reveals no intent to expand a statutory time frame such as that contained in *N.J.S.A.* 40A:16–12.

[6] We also express no opinion as to whether our courts have the power to expand the time limit set forth in *N.J.S.A.* 40A:16–12.

certainly, the mere filing of a complaint could not serve to halt the statutory time frame. We are, thus, satisfied that the only action taken to fill the vacancy occurred on October 3 and 17, 2012, and that because those proceedings were vacated by a trial court order, which was not appealed, that issue is no longer reviewable.

Second, today's decision is informed by the fact that, contrary to the approach taken in the trial court and urged by the Zimmer group, the Council was not *required* to fill the vacancy. The Legislature only provides a governing body's remaining members with the *discretion* to fill a vacancy. *N.J.S.A.* 40A:16–12. Accordingly, the judge was not empowered to compel a vote on the subject because the council was not required by law to act. The Zimmer group's application for the judge's intervention sought the issuance of an order in the nature of the ancient writ of mandamus. Courts, however, are not authorized to so compel public officials or governmental bodies unless the official's or the governing body's obligation to act is "wholly free from doubt." *Loigman v. Twp. Comm. of Middletown,* 297 *N.J.Super.* 287, 299, 687 *A.*2d 1091 (App.Div.1997); *see also Switz v. Twp. of Middletown,* 23 *N.J.* 580, 587–88, 130 *A.*2d 15 (1957) (recognizing that mandamus "is a coercive process that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result"); *Borough of Eatontown v. Danskin,* 121 *N.J.Super.* 68, 73, 296 *A.*2d 81 (Law Div.1972) (holding that mandamus "is available only where there is a clear and definite right to the performance of a ministerial duty, in essence mandatory and final[;] [u]nless the particular duty is peremptory, the fair exercise of judgment and discretion is the province of the functioning authority"). Because the Council was permitted—but not required—to fill the vacancy, the trial judge was not empowered to direct the Council to exercise *its* discretion in favor of filling the vacancy.

Third, even if what we have said were not a bar to any further consideration of the controversy, and even if the vote that occurred on January 16, 2013, could somehow be viewed as falling within the thirty-day window set forth in *N.J.S.A.* 40A:16–12, we would invalidate that action because the abstentions were incorrectly interpreted as negative votes.

As we recognized in *Booker, supra,* 431 *N.J.Super.* at 553–58, 71 *A.*3d 206, a governing body may adopt its own rules of procedure, which are to be given effect so long as they are not "inconsistent with ordinance or statute." *N.J.S.A.* 40:69A–180(a). Hoboken has rules of procedure and these rules recognize that a councilmember may "vot[e] yea or nay" or "abstain or vote 'present,' which has the effect of an abstention." These rules, however, do not explain what it means to abstain, thereby requiring application of the meaning of an abstention as declared in *Robert's Rules of Order.*[7]

We are persuaded that the trial judge incorrectly interpreted the meaning of an abstention in his consideration of *Robert's Rules,* which declare that "to 'abstain' means not to vote at all." *Robert's Rules,* Ch. III, § 44. Indeed, the authors' official interpretation explains that:

> The phrase "abstention vote" is an oxymoron, an abstention being a refusal to vote. To abstain means to refrain from voting, and, as a consequence, there can be no such thing as an "abstention vote."
>
> [*Robert's Rules Official Interpretation,* www.robertsrules.com/faq.html (last visited June 16, 2013) ]

This is precisely how the courts of other jurisdictions have interpreted what it means to abstain when governed by *Robert's Rules.* *See Merry v. Williams,* 281 *Ga.* 571, 642 *S.E.*2d 46, 50 (2007); *McHenry State Bank v. Harris,* 89 *Ill.*2d 542, 61 *Ill.Dec.* 547, 434 *N.E.*2d 1144, 1150 (1982); *Ideal Fed. Sav. Bank v. Murphy,* 339

---

[7] That is, Hoboken's rules of procedure declare that *"Robert's Rules of Order* shall be followed at regular meetings to the extent that they do not conflict with these [r]ules of [p]rocedure." Accordingly, when the other specific rules of procedure provide no guidance, *Robert's Rules* are to be applied in Hoboken.

*Md.* 446, 663 *A.*2d 1272, 1273 (1995); *Rockland Woods, Inc. v. Suffern,* 40 *A.D.*2d 385, 340 *N.Y.S.*2d 513, 514 (1973). Here, the trial judge concluded that because *Robert's Rules* recognizes that an abstention may at times have "the *same effect* as a negative vote," *Robert's Rules,* Ch. II, § 4 (emphasis added), the abstentions here should be counted as "no" votes. The judge was mistaken, however, because even though in some instances an abstention has the effect of a negative vote,[8] it is actually not a vote at all.

Indeed, as we observed in the companion case, a fair interpretation of an abstention in this setting also comports with the notion that the abstainers were neither voting in favor of nor against Mr. Doyle. As in the companion case, those who favor an interpretation of the abstentions as "no" votes are laboring under the misunderstanding that "yes" and "no" were the only principled choices available to the remaining councilmembers. *Booker, supra,* 431 *N.J.Super.* at 557–58, 71 *A.*3d 206. Councilmembers, in fact, had at least three choices; they could legitimately favor Mr. Doyle, or oppose him, or oppose filling the vacancy with anyone. The means of expressing the last of these three choices was by abstaining. We, thus, find no merit in the argument that the abstentions were unprincipled or that the abstaining councilmembers were in dereliction of their duties.[9]

Reversed.

---

[8] For example, when a specific number of affirmative votes is required to pass a measure, an abstention does not contribute to the affirmative total and, thus, has the effect of a negative vote.

[9] We also reject the argument that common law principles support the trial judge's disposition here for the reasons expressed in *Booker, supra,* 431 *N.J.Super.* at 554–58, 71 *A.*3d 206.