Plaintiff's motion for leave to file a late notice of claim is granted.

IN THE MATTER OF APPOINTMENTS TO VACANCIES IN THE MUNICIPAL GOVERNMENT OF THE BOROUGH OF RUTHERFORD.

Superior Court of New Jersey
Law Division

Decided January 30, 1976.

*Mr. Thomas H. Sullivan,* attorney for plaintiff (*Messrs. Ely, Bruinooge & Sheridan,* attorneys).

*Mr. M. Harry Muser,* attorney for defendant.

TRAUTWEIN, A. J. S. C. This matter was commenced on January 21, 1976 by the filing of an order to show cause and complaint in lieu of prerogative writs by plaintiff

Mayor William Brooks of Rutherford. The action is in the nature of seeking *mandamus* and asks for a declaratory judgment concerning the interpretation and applicability of the Municipal Governing Body Vacancy Law, *L.* 1975 *c.* 213; *N. J. S. A.* 40:45B-1 et seq. Plaintiff also seeks to enjoin the borough council from exercising certain of its powers of appointment under *N. J. S. A.* 40:87-16 when such power matures at some point in time after February 1, 1976.

The court has read the briefs, affidavits and other pleadings. It has also considered extensive oral argument. Thankfully, the instant case is quite straightforward and there are no material facts in dispute. The issues resolve themselves almost entirely into questions of law. Based upon all of the available legal input presented to the court I make the following findings of fact.

Plaintiff William Brooks was elected councilperson as a nominee of the Democratic party on November 6, 1973 for a three-year term ending December 31, 1976. On January 1, 1976 Brooks resigned his council seat and assumed the duties of the office of mayor, an office to which he was elected in November 1975.

The present members of the Rutherford council are Alan Note, Margaret Schak, Patrick Conway, Barbara Chadwick and Willard Reenstra. Councilpersons Note, Schak and Conway are nominally Democrats. Councilpersons Chadwick and Reenstra are nominally Republicans. Mayor Brooks is a Democrat.

The Rutherford governing body met on January 1, 1976 to reorganize itself pursuant to *N. J. S. A.* 40:88-1 and to attempt to fill the council vacancy created by Brooks' resignation. Three Democrats were nominated to fill the council vacancy at that time: James Ely, James Harrison and Joseph Soga. Mayor Brooks and councilpersons Note and Schak voted in favor of each nominee. Councilpersons Conway, Reenstra and Chadwick voted against the nominees. The council vacancy was therefore not filled by a vote of

the majority of the whole governing body. *N. J. S. A.* 40: 45B–2(a).

At this reorganization meeting attempts were made to appoint various persons to the offices of borough attorney, auditor and prosecutor. Each nominee was defeated by a vote of three to two, with Conway, Reenstra and Chadwick constituting the majority.

At a meeting of the governing body on January 6, 1976 Mayor Brooks attempted to solicit from the members of the Council names of nominees to fill the council vacancy. No names were offered and the second attempt to fill the council seat proved fruitless.

At a meeting of the governing body on January 20, 1976 the names of James Harrison, James Ely, Joseph Soga and Phillip LaPorta were each consecutively placed in nomination to fill the council vacancy. The council vacancy went unfilled as each nomination was defeated by a vote of three to three, Conway, Reenstra and Chadwick voting not to appoint the nominees.

On numerous occasions, including the meetings of the governing body, the three councilpersons who voted against the nominees expressed their reasons for not filling the council vacancy. Although at one point a proffered reason was that these councilpersons believed that the filling of the council vacancy was discretionary and not mandatory, the essence of Conway's, Reenstra's and Chadwick's decision not to vote for the Democratic nominees was that they believed it would be better to allow the entire electorate of Rutherford to decide who should fill the council vacancy. The court finds that there is no evidence of any bad faith on the part of these councilpersons and that the reason espoused is rational and is a product of honest belief. This is not to say that the court agrees with the reason; indeed, the court is troubled by the failure of the governing body to fill the council vacancy expeditiously and thereby carry on the business of the community whole.

The court makes the following conclusion of law:

Rutherford is a borough and is governed by *N. J. S. A.* 40:86-1 *et seq.* Thus, the court must look to the particular Borough statute governing the filling of vacancies in the council in order to determine the proper method of filling the instant vacancy. The applicable statute is the recently amended *N. J. S. A.* 40:87-11, which states:

> A vacancy occurring in the office of mayor or any member of the council, shall be filled in the manner provided by the "Municipal Governing Body Vacancy Law."

Therefore, the search for the correct legal conclusion to this problem must be directed towards the new Municipal Governing Body Vacancy Law.

The first question the court must answer is which section of the statute governs the filling of the instant council vacancy. It is argued by plaintiff that if *N. J. S. A.* 40:45B-2(a) governs, the members of the governing body have an affirmative duty to fill the council vacancy, *i. e.*, they must act in good faith and must consider responsibly all nominees upon their respective merits. The contrary position is asserted by defendants. Defendants argue that the operative section is *N. J. S. A.* 40:45B-2(c), which provides for a special election in the event that the members of the governing body are unable to fill the vacant office.

The court holds that as between subsection (a) and subsection (b), subsection (a) of the statute applies. This subsection states:

> a. If the vacancy occurs subsequent to September 1 preceding the general election which will occur in the next-to-the-last year of the term of the member whose office has become vacant, the office shall be filled for its unexpired term by appointment by a majority vote of the whole membership of the governing body.

In plain language, this means that when a vacancy in the governing body occurs subsequent to September 1 in the

next-to-last year of the term, the whole governing body is required to make an appointment for the unexpired term. The point of reference in determining whether subsection (a) applies is two-fold. First, the date of the occurrence of the vacancy must be determined. Here the council vacancy occurred on January 1, 1976. Second, the relationship between the date of the vacancy and September 1 of the next-to-last year of the term must be analyzed. In this case William Brooks was elected in 1973 and took office on January 1, 1974. Therefore, 1974 was his first year of office. It follows that 1975 was his next-to-the-last year because 1976 necessarily is, or would have been, his last year. Thus, looking to September 1, 1975 and comparing January 1, 1976 to it, the conclusion jumps out of the statute: the council vacancy occurred subsequent to September 1 of the next-to-last year of the term.

Subsection (b) appears impossible to apply in the instant case because it states:

b. If the vacancy occurs prior to September 1 preceding the general election in any year other than the last year of the term of the member whose office has become vacant, the vacancy shall be filled for the unexpired term at the next ensuing general election. The governing body by a vote of the majority of its whole membership may fill the vacancy temporarily by appointment until the election and qualification of a successor.

Since the council vacancy occurred in the *last* year of the term, this provision is clearly inapplicable.

A necessary corollary to this application of the statute is the conclusion that within the context of *N. J. S. A.* 40:45B–1 *et seq.* the phrase "municipal governing body" refers to the mayor *and* council. The statute is addressed to filling vacancies in the municipal governing body. No distinction in the manner of filling a vacancy is made between filling a mayoral vacancy or a councilmanic vacancy. Thus, where the statute calls for a vote of the "majority of the whole membership of the governing body" it means a vote of all — including the mayor. This is a clear depar-

ture from prior law which had precluded a mayor from voting except in the event of a tie. *N. J. S. A.* 40:88–1; *Armstrong v. Whitehead,* 67 *N. J. L.* 405 (Sup. Ct. 1902); *Cianciotto v. Milstein,* 132 *N. J. Super.* 83 (App. Div. 1975), aff'd 66 *N. J.* 581 (1975).

The clear language and intent of the Municipal Governing Body Vacancy Law compels the conclusion that the mayor has the power to vote. He is a member of the governing body and therefore may vote when the *whole* membership of the governing body fills a vacancy.

In order to avoid confusion, the court notes that the provision allowing the mayor to vote to fill a vacancy is strictly limited to filling *governing body* vacancies. For example, under *N. J. S. A.* 40:87–12 and *N. J. S. A.* 40:87–16 the mayor continues to be precluded from voting unless there is a tie on the council.

The court, then, is confronted by the seemingly mandatory direction to the governing body to fill the vacancy. In order to intelligently decide the proper construction of the provision, the Court must refer to subsection (c) of the statute. This subsection states:

c. Whenever a vacancy to be filled for the unexpired term by the governing body is not filled within 30 days of the occurrence of the vacancy, the municipal clerk shall forthwith call a special election to be held as soon as practicable to fill the vacancy. No appointment shall be made by the governing body to fill the vacancy after a special election has been called. If the vacancy occurs within 6 months prior to the end of the term of office, the provisions of this subsection shall not apply and the governing body shall continue to have the power to fill the vacancy. [*N. J. S. A.* 40:45B–2(c)]

This provision was obviously inserted by the Legislature in its wisdom in order to provide a procedure if the governing body could not decide on a candidate to fill a vacancy. There will be many instances where a good faith effort is made to fill a vacancy and the requisite majority vote of the whole governing body is impossible to achieve. Thus,

subsection (c) is a safety valve which is intended to provide relief to the citizens of a municipality where the governing body is stalemated.

When such a stalemate occurs, subsection (c) requires that the municipal clerk call a special election to fill the vacancy unless the vacancy occurs within six months of the end of the term of office. The statute gives the governing body 30 days to exercise its duty to fill the vacancy. If it is unable to do so, the statute prevents a permanent vacancy and shifts the responsibility of filling the office from the governing body to the electorate.

█ █ The primary question in this case is, then, did councilpersons Conway, Reenstra and Chadwick violate the public trust placed upon them by their offices when they refused to fill the council vacancy. See *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433 (1952). In this case I have examined the proffered reasons of these councilpersons very carefully. I find that the statute imposes upon all members of the governing body the obligation to consider the nominees in good faith. I find as a matter of law that Conway, Chadwick and Reenstra did consider the nominees and that they conscientiously and in good faith exercised their vote on the governing body. While I again repeat that although I personally may not agree with the reasons given by these councilpersons, it is not for this court to substitute its views for those of a legislator. Under this act it is a permissible reason not to fill a vacancy because a member of the governing body believes that the choice is better left to the entire electorate. Quite frankly, however, if subsection (c) were not included in the statute, I would decide the question in a different manner.

█ █ This result will not lead to abuse of the statute. It is arguable that if it is permissible to force a special election, a governing body dominated by one political party could nullify the intent of the statute as expressed in *N. J. S. A.* 40:45B–3 to choose a successor from the same political party as the previous incumbent. Consider this factual

scenario: A governing body is composed of six Democrats (the mayor and five councilpersons) and one Republican. The Republican councilperson was elected two years ago and has one year left in the term. In the most recent election the municipality voted overwhelmingly Democratic. If the Republican resigns, a vacancy will occur which will in the first instance be required to be filled by a Republican. However, the Democratic-dominated governing body knows that if it can force a special election it is likely that a Democrat would be elected. This result is the great horror some people believe will be created by the statute. The court holds, however, that this result was not contemplated by the Legislature and in fact the intent of the Legislature is to create a procedure which will make the above scenario impossible.

The court finds that the Legislature precluded the above stratagem by requiring that not only must the *appointment* be of a person of the same political party as the previous incumbent, but also that the person *elected* to fill the vacancy must be of the same political party as the previous incumbent. I recognize that the statute does not expressly provide for this result. However, in construing statutes the court must look to the overall intent and purpose of the law. 2 *Sutherland, Statutory Construction* (3 ed 1943), § 4704; *Alexander v. N. J. Power & Light Co.*, 21 *N. J.* 373 (1956). In this case the Legislature very plainly intended that all vacancies be filled by persons having the same political allegiance as the previous incumbent. Thus, in order to maintain the spirit of the statute I find as a matter of statutory interpretation that if a special election is called by the municipal clerk to fill the council vacancy, candidates to fill said council vacancy shall only be those persons who could qualify to run in a primary election of the party of the previous incumbent. See, for example, *N. J. S. A.* 19:23–7 for the requirements of candidates who may run in party primaries. Thus, candidates in the special election in Rutherford, if one is called, shall

be persons who could qualify to be candidates in a Democratic primary. Of course, the *entire* electorate of Rutherford shall be permitted to vote for said candidate at the special election inasmuch as the entire electorate would have been represented on the governing body if that body had exercised its statutory power and appointed a successor to Brook's vacated council seat.

I have decided the issue this way because I believe that a fundamental principle of our representative democracy is, in Alexander Hamilton's words, that "the people should choose whom they please to govern them." 2 *Elliots Debates* 257; *Powell v. McCormack,* 395 *U. S.* 486, 89 *S. Ct.* 1944, 23 *L. Ed.* 2d 491 (1969). Furthermore, the Supreme Court of New Jersey has held that the party system embodies our accepted traditions and believing with proper cause that it is in the public interest, the Legislature may adopt reasonable regulations calculated to protect against its deterioration and abuse. See *Kilmurray v. Gilfert,* 10 *N. J.* 435 (1952) ; *Stevenson v. Gilfert,* 13 *N. J.* 496 (1953). In the context of the Municipal Governing Body Vacancy Law, therefore, I find that in order to prevent a distrust of political parties and a possible abuse of the statute, the special election, if called, will be limited to only those candidates who are of the same political party as was the previous incumbent.

Finally, I reach the question of the propriety of the imposition of temporary restraints upon the council. Since I have already found that there is no evidence of bad faith on the part of Conway, Reenstra and Chadwick, I see no reason to revoke the clear instructions of *N. J. S. A.* 40 :87–16. This statute has not been altered by the Municipal Governing Body Vacancy Law and it remains in full force and effect. When the terms of office of borough auditor, attorney, prosecutor or any other appointive office expire the provisions of *N. J. S. A.* 40 :87–16 will govern. The court should not intrude into the legislative arena. It will allow the

mayor and council to nominate and appoint in the usual statutory course. I find no evidence of an abuse of the Municipal Governing Body Vacancy Law for the purpose of using *N. J. S. A.* 40:87–16 for impermissible political advantage. I am unconvinced that there will be a violation of the public interest if *N. J. S. A.* 40:87–16 comes into effect. Therefore, I will not fetter the council with temporary restraints.