219 N.J. Super. 231 (1987)
530 A.2d 68
ETHAN ALLEN SMITH, JACK ALBAUGH & A. FRED HULICK, COUNCILMEN OF BOROUGH OF BARNEGAT LIGHT, PLAINTIFFS,
v.
HENRY J. GHIGLIOTTY, JR., MAYOR, JAMES P. STAVISH & MICHAEL W. SPARK, COUNCILMEN OF BOROUGH OF BARNEGAT LIGHT; & BOROUGH OF BARNEGAT LIGHT, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided June 4, 1987.
*232 Frank A. Buczynski, Jr. for plaintiffs (Shackleton, Hazeltine & Buczynski, attorneys).
Jerry J. Dasti for defendants (Dasti & Murphy, attorneys).
SERPENTELLI, A.J.S.C.
This case involves a novel issue under the Municipal Vacancy Law. N.J.S.A. 40A:16-1 et seq. The question is simply stated, the answer is more complex. May members of the governing body refuse to attend a meeting if their purpose is to preclude a quorum and thereby prevent the governing body from deciding whether or not an existing vacancy should be filled? Put another way, if council members are purposely absenting themselves, can the court order them to attend a meeting so that the governing body may determine whether a vacancy in the governing body should be filled?
The Borough of Barnegat Light has a borough council form of government functioning under N.J.S.A. 40:86-1 et seq. It *233 consists of a mayor and six councilmen. On April 9, 1987 Edwin P. Kenny died, creating a vacancy in the position of councilman. His term expires on December 31, 1987. Councilmen Ethan Allen Smith, Jack Albaugh and A. Fred Hulick, plaintiffs, attempted to arrange a special meeting for April 30, 1987 to consider filling the vacancy. Mayor Henry J. Ghigliotty, Jr., Councilmen James P. Stavish and Michael W. Spark, defendants, have refused to participate in either calling or attending such a meeting. The mayor's stated purpose for refusing to attend the meeting is that he believes that the vacancy should not be filled by the governing body but rather by the electorate in the next general election.
The refusal of the mayor or two councilmen to attend a meeting prevents the remaining three councilmen from holding a meeting. A special meeting can be called either by the mayor or by four councilmen and a quorum can be achieved by three councilmen plus the mayor or by four councilmen. N.J.S.A. 40:88-1. If a quorum can be attained, the vacancy can be filled by a majority vote of the remaining members of the governing body. N.J.S.A. 40A:16-7. The mayor votes only in the event of a tie. N.J.S.A. 40A:16-8. Thus, in this case, the three plaintiffs have the ability, if a meeting is called and if they decide to fill the vacancy, to control the result. As long as defendants stay away, they can control the result because if the vacancy is not filled within 30 days after the occurrence of the vacancy, the office shall remain vacant for the remainder of the term or until the election and qualification of a successor, as the case may be. N.J.S.A. 40A:16-11; N.J.S.A. 40A:16-13.
The pertinent statutory authority reads:
If the incumbent whose office has become vacant was elected to office as the nominee of a political party, the municipal committee of the political party of which the incumbent was the nominee shall, no later than 15 days after the occurrence of the vacancy, present to the governing body the names of three nominees for the selection of a successor to fill the vacancy. The governing body may, within 30 days after the occurrence of the vacancy, appoint one of the nominees as the successor to fill the vacancy. If the municipal committee which nominated the incumbent fails to submit the names of the nominees *234 within the time prescribed herein, the governing body may, within the next 15 days, fill the vacancy by the appointment of a successor from the same political party which had nominated the incumbent whose office has become vacant. [N.J.S.A. 40A:16-11]
....
If a governing body shall fail or decline to fill a vacancy in the membership of the governing body by appointment as provided in N.J.S. 40A:16-4 or 40A:16-5 within the time prescribed by N.J.S. 40A:16-11 or 40A:16-12, the office shall remain vacant for the remainder of the term or until the election and qualification of a successor, as the case may be. [N.J.S.A. 40A:16-13]
The deceased councilman was a member of a political party, but the municipal committee failed to make any nomination within 15 days. While more than 30 days has passed, this court issued an order prior to the expiration tolling the 30-day period pending decision as to whether the council members could absent themselves specifically for the purpose of allowing the 30 days to expire. All parties concede that if a meeting is to be held, the governing body may decline to fill the vacancy. The dispute is restricted to the question of whether a meeting must be held to exercise the option to fill or not to fill the vacancy.
As noted, there is no controlling authority with respect to the issue in this case. However, based upon the decisions under the Municipal Vacancy Law and its predecessor concerning related questions, the legislative history, the preference to conduct public matters in a public setting as evidenced by the Open Public Meetings Act (N.J.S.A. 10:4-6 et seq.) and the substantial authority relating to the fiduciary obligation of public officials, this court concludes that it should order defendants to participate in a meeting so that the issue of whether the vacancy should be filled can be determined in a public setting.
The closest decision on point is Kossyk v. Light, 157 N.J. Super. 338 (App.Div. 1978). In that case a quorum had been established, other business had been transacted and then the quorum was intentionally dissipated when the selection of a person to fill a vacancy was to be considered. The trial judge found that it was obvious to certain dissenting members of the *235 governing body that if they remained, a person whose selection they did not favor would be elected. The only avenue to prevent that course of events was to leave. The trial judge specifically found that the dissenters were unhappy with the mayor's nominee and embarked on a "course of frustration of a vote." Id. at 340. The Appellate Division found all of these facts supported by the record and then concluded:
In these circumstances the trial judge, unhelped by the absence of precedent as we are, determined that orderly government should not be frustrated by whim and the device of council persons absenting themselves from a position to which they were elected and to the attendance on which they had a solemn duty. Accordingly, he held that the erstwhile quorum continued from the previous item of business to the next, from the one during which the recalcitrants were physically present to the one during which by their own choice and intention they were not.
Common sense prompts the inquiry as to whether it should make a difference whether these appellants, to whom, among others, had been entrusted the government of the municipality, were by choice out in the hall refusing to vote or standing mute in the council chamber. As unacceptable [as the nominee] and the system might have been to appellants, it appears to us that impotent, stalemated government must be worse. [Ibid.]
While Kossyk is factually distinguishable and it could be argued that the initial presence of a quorum was all that the remaining members needed to continue with the business of the governing body, the underlying justification is clear. The rationale of the holding is that government's business should not be frustrated by the whim and device of council members to serve their political purposes. Furthermore, even if those purposes have justification beyond simple political expediency, attempts to stalemate the workings of government should not be countenanced.
The case of Levin v. Woodbine Borough Council, 181 N.J. Super. 61 (Law Div. 1981), provides additional support for the proposition that members of the governing body should meet in a public forum to determine whether a vacancy should be filled. In that case plaintiff had been elected mayor under the borough form of government. At a regular meeting of the governing body, a resolution was adopted declaring that the mayor had failed to attend and participate in meetings of the governing *236 body for eight consecutive weeks without having been first excused. The office of mayor was declared vacant pursuant to N.J.S.A. 40A:16-3(g). In summary, that section provides that the office of the mayor shall be deemed vacant whenever the mayor is required by law to attend meetings of the governing body and fails to attend and participate in any meetings of the governing body for a period of eight consecutive weeks without being excused from attendance by a majority of the members of the governing body at the conclusion of such period. The court addressed a question raised by the mayor as to the operative date on which the eight consecutive weeks began to run. In so doing it said:
When confronted with an issue whose resolution requires the interpretation of a statute, the initial task for any court is to discern and to effectuate the intent of the Legislature. [citations omitted] An investigation of the purpose of the Municipal Vacancy Law must necessarily begin with reference to the Municipal Governing Body Vacancy Law, (N.J.S.A. 40:45B-1 et seq., which was repealed and replaced by N.J.S.A. 40A:16-1 et seq.), for such was the predecessor to the present statute and was the law in which the language of N.J.S.A. 40A:16-3(g) first appeared. The Statement accompanying Senate Bill 419, which was ultimately enacted as the Municipal Governing Body Vacancy Law, includes the following:
[This] Section ... of the Bill is generally a consensus of the various statutes in which vacancies are defined, except for subsection g, which is new. This has been proposed as a result of reported instances where members have deliberately refused to attend meetings or have been forbidden by the court to participate because of a conflict of interest which only the member can resolve. When such absentation is uncontrolled, the public interest can be frustrated. [181 N.J. Super. at 68-69; emphasis supplied]
The case of In re Appointment to Rutherford Borough, 140 N.J. Super. 328 (Law Div. 1976) is also factually distinguishable but contains relevant language concerning the dilemma now before this court. It arose under the predecessor of the present Municipal Vacancy Law and some aspects of the prior law considered in Rutherford have been modified. The modifications, however, do not bear on the issue before the court. In that case, a quorum was established but three members of the governing body refused to vote for any nominee to fill the vacancy. One of the reasons given by those councilmen was that they felt that the vacancy should be filled *237 by the electorate at the next ensuing election. The court specifically found that the statute imposes upon all members of the governing body the obligation to consider the nominees in good faith. Although the court disagreed with the justification given for the refusal to fill the vacancy, it upheld the right of the councilmen to refuse to fill the vacancy based on their preference to have it filled by election. That approach was embodied in the amendment to the Municipal Governing Body Vacancy Law. N.J.S.A. 40A:16-13 specifically refers to the situation in which the governing body shall fail or decline to fill a vacancy. The relevancy of the Rutherford decision is the court's finding that the members of the governing body must at least participate in good faith in their evaluation of the issue of whether or not to fill the vacancy. How can it be determined that members of the governing body are acting in good faith if their conduct cannot be assessed in a public debate? A statute should not be construed so as to permit its purpose to be defeated by evasion. Crifasi v. Oakland, 156 N.J. Super. 182, 187 (App.Div. 1978). Where municipal officials violate the law either in substance or in form, the court will provide a remedy. Grogan v. DeSapio, 15 N.J. Super. 604, 612 (Law Div. 1951); 2 McQuillin, Municipal Corporations, (3 ed. 1979), § 1037.
As noted above, whenever determination of an issue implicates legislative intent, the first obligation of the court is to attempt to discern and effectuate that intent. State v. Madden, 61 N.J. 377, 389 (1972). Regrettably, a review of the legislative history of the Municipal Governing Body Vacancy Law and of the subsequent Municipal Vacancy Law does not provide a great deal of guidance. There are few clear indicators to be gleaned from the legislative history. Perhaps most revealing is the legislative statement quoted in Levin v. Woodbine Borough Council, supra, relating to the predecessor of N.J.S.A. 40A:16-3(g). It bespeaks an effort to prevent members from deliberately refusing to attend meetings or from purposely frustrating the public interest.
*238 Therefore, the limited legislative history as well as the Kossyk, Levin and Rutherford cases support the conclusion that defendants should make the decision of whether to fill the vacancy at a public meeting. Although the Open Public Meetings Act (N.J.S.A. 10:4-6 et seq.) does not directly address this issue, it supports the same conclusion. By remaining away from any meeting of the governing body until the 30 day period has run, thereby controlling the decision as to whether the vacancy shall be filled, defendants violate the spirit and purpose of that Act. The procedure followed by defendants permits them to avoid a full accounting of their thought processes and insulates the public from discussion which would have inevitably taken place had a meeting been held. There is no way of knowing whether defendants will maintain the same position if they listen to the electorate. Conversely, it may be that plaintiffs, who are apparently pressing for an appointment, might change their minds and accept the proposition that the vacancy should not be filled pending an election. The mayor has stated in a letter that his reason for absenting himself is that the public should make the decision at an election. His justification should be put to the test of public discussion.
The introductory statement to Assembly Bill No. 1030 which ultimately became the Open Public Meetings Act, reads in part:
The public's right to know the process by which governmental decisions are made and to witness that process in full detail may be obstructed by needlessly barring members of the public and the press from certain policymaking meetings of public bodies. If the public and the press cannot attend, they cannot learn of many positions that are considered or taken at such meetings by individual officials serving the public. Lack of this information can lessen public confidence in governmental decisions and impair the public's function of holding officials accountable in a democracy. [L. 1975, c. 231; N.J.S.A. 10:4-6 et seq.]
N.J.S.A. 10:4-7 contains additional legislative findings and declarations with respect to the spirit and intent of the Open Public Meetings Act. It reads in part:
The Legislature finds and declares that the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to *239 the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society....
Defendants' decision to stay away contradicts this strongly expressed legislative policy and has no purpose other than to excuse them from having to demonstrate the validity of their reasoning in public. Clearly, the right of the public to witness the deliberative process is frustrated. The secrecy which the Open Public Meetings Act seeks to discourage is instead encouraged and faith in government is undermined.
Finally, defendants' conduct ignores well established principles regarding the obligation which they assumed when they were elected. The cases are legion. They are gathered in Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952) and their holdings are succinctly summarized as follows:
... [Public officials] stand in a fiduciary relationship to the people whom they have been elected or appointed to serve. [citations omitted] As fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. [citations omitted] They must be impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly. When public officials do not so conduct themselves and discharge their duties, their actions are inimicable to and inconsistent with the public interest, and not only are they individually deserving of censure and reproach but the transactions which they have entered into are contrary to public policy, illegal and should be set aside to the fullest extent possible consistent with protecting the rights of innocent parties. [citations omitted]
... The citizen is not at the mercy of his servants holding positions of public trust nor is he helpless to secure relief from their machinations except through the medium of the ballot, the pressure of public opinion or criminal prosecution. He may secure relief in the civil courts.... [at 474-476; emphasis supplied; citations omitted]
In short, "a public office is a public trust." Aldom v. Roseland Bor., 42 N.J. Super. 495, 500 (App.Div. 1956). A public official who purposely stays away from a meeting with the expressed intent of denying the governing body and the public the right to meet and discuss a critical public issue, disserves *240 that public trust. It is not a question of whether defendants' reasons for not filling the vacancy will hold up under public discussion, for indeed they may. Rather, the point is that defendants are frustrating a frank, open debate which will determine whether their positions will withstand the light of public scrutiny. The public's right to be involved in the resolution of such vital issues cannot be denied by an abuse of the public trust.
Therefore, the court orders that defendants attend a public meeting to be held within ten days of the date of this decision. To be certain that the issue will be given a full and thorough discussion, the court directs that public notice be given in accordance with the Open Public Meetings Act as though a special meeting were being called for the purpose of discussing this issue only. Even if the question is to be discussed at a regular meeting of the borough council, public notice should be given that it is included on the agenda. It is not ordinarily necessary to publish the agenda in full for each regular meeting. Crifasi v. Borough of Oakland, supra. However, the court wants to guarantee that no actions will be taken to limit the public's knowledge that a meeting will be held concerning the filling of the vacancy.
The outcome of the public debate is of no consequence to the court. Rather, this decision seeks only to insure that the argument will be open, the reasonings of both sides will be scrutinized, elected officials will be accountable and the public interest will be served.