682 A.2d 266

MARY E. PATTERSON, ET AL., PLAINTIFFS, v. CARDELL COOPER, ET AL., DEFENDANTS.

CHARLES ROBINSON, JR., ET AL., PLAINTIFFS, v. CARDELL COOPER, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided October 18, 1994.

*Jason Holt* for plaintiffs Mary E. Patterson and Carol Y. Clark.

*Marvin Gittleman* and *Brian M. Chewcaskie* for plaintiffs Charles V. Robinson, Jr., Yvonne C. Blake and Carolyn Meacham (*Gittleman, Muhlstock & Chewcaskie,* attorneys).

*Robin R.C.W. Johnson* for defendant City of East Orange (*City of East Orange Corporation Counsel,* attorneys).

*Bruce S. Rosen* and *Elliot N. Turrini* for defendant Cardell Cooper, Mayor of the City of East Orange (*Lowenstein, Sandler, Kohl, Fisher & Boylan,* attorneys).

WEISS, A.J.S.C.

### INTRODUCTION

This matter comes before the court upon a verified complaint in lieu of prerogative writs filed by plaintiffs Mary Patterson and Carol Clark in support of an Order to Show Cause. Plaintiffs, two members of the City of East Orange council, seek: 1) to enjoin defendants the City of East Orange ("the City"), and Cardell Cooper, Mayor of the City of East Orange ("Mayor Cooper" or "the Mayor") from implementing the resolutions enacted at the July 27, 1994, and August 15, 1994, City Council meetings in which Mayor Cooper voted; and 2) to enjoin Mayor Cooper from voting in any future City Council meetings.

The court is called upon to determine whether *N.J.S.A.* 40:103–5(82) prevents Mayor Cooper from: 1) constituting part of the quorum required to hold a City Council meeting; and 2) voting as a member of the City Council when the council members are deadlocked.

## BACKGROUND

The City of East Orange operates under a charter, embodied in *N.J.S.A.* 40:103–5(71)–103–5(127),[1] which provides for two elected council members from each ward. *N.J.S.A.* 40:103–5(75). Because the municipality is divided into five wards, the City Council consists of ten members.

In the weeks prior to July 27, 1994, the City Council was deadlocked 5–5 on many pieces of legislation, including items regarding applications for federal grants for summer youth programs, an application for Urban Enterprise Zone designation, applications for the hiring of auditors and accountants, and payment of bills, charges and appropriations. Certain items were time-sensitive, such as those related to the application for Urban Enterprise Zone designation.

On July 25, 1994, the Mayor advised the East Orange City Clerk's Office that he wanted to convene a Special Meeting of the City Council for Wednesday, July 27, 1994. The agenda for the Special Meeting included matters that had either previously been before the City Council, or had been provided to it or to a City Council Committee.

The Clerk's Office filed a notice of the meeting, transmitted copies of the notice to the *Star–Ledger* and the *East Orange Record* via facsimile, and posted copies of the notice on three official bulletin boards throughout City Hall. Deputy City Clerk Lillian W. Moore certified that council members Patterson, Clark,

---

[1] *N.J.S.A. Acts Saved From Repeal,* § 1:8–1(1).

Meacham and Robinson received notice of the meeting and notified the Clerk's Office that they would not be in attendance.

Only five council members attended the July 27, 1994 meeting. Pursuant to *N.J.S.A.* 40:103–5(82), a quorum of the City Council, in this case, the presence of six council members, is required to conduct a City Council meeting. Mayor Cooper and the five attending council members decided to count the Mayor's presence in calculating a quorum. The Mayor voted along with the actual council members and various resolutions were purportedly adopted, including:

1) approval of a budget for the $2,145,000 1994–1995 Community Development Block Grant;

2) initial approval of an ordinance to designate the East Orange Economic Development Corporation as the Urban Enterprise Zone administrative body;

3) approval of a contract to C.H. Sanders to serve as construction manager for the Plaza Village construction project;

4) authorization for the Department of Policy, Planning and Development to solicit bids for a professional property manager to manage real estate that the City had acquired through tax foreclosures;

5) approval to pay bills, charges and appropriations for City expenditures, excluding payroll, for the period September 30, 1993 through April 30, 1994;

6) approval of the City payroll for the period June 18, 1994 through July 1, 1994; and

7) approval of various mayoral appointments.

On August 15, 1994, ten council members attended the scheduled City Council meeting. Pursuant to *N.J.S.A.* 40:103–5(82), adoption of legislation requires "an affirmative vote . . . of at least a majority" of the Council, "unless otherwise required by law." Two legislative items, (1) final approval of the ordinance designating the East Orange Economic Development Corporation as the

Urban Enterprise Zone administrative body; and (2) authorization to issue $15,000,000 in tax notes failed to receive the affirmative vote of a majority of the Council. The first item received five council votes in favor, two against, and three abstentions and the second item received five council votes in favor, four against and one abstention. Mayor Cooper then voted to supply the sixth affirmative vote for each legislative item.

On September 9, 1994, plaintiffs Patterson and Clark filed the verified complaint in lieu of prerogative writs. On September 12, 1994, after hearing oral argument, this court signed an order to show cause with temporary restraints, immediately enjoining Mayor Cooper from being counted for purposes of constituting a quorum for a City Council meeting and setting a return date of October 11, 1994. The order also stated that Mayor Cooper was not precluded from resubmitting any of the disputed legislative items to the City Council for approval. Indeed, on the record of September 12, 1994, the court repeatedly encouraged defendants to call another meeting to re-vote on the disputed items. The court indicated that, if necessary, it would enter an order compelling council members to attend such a meeting. Although the return date for the order to show cause was adjourned to October 18, 1994, defendants did not call for a re-vote on the disputed items before appearing in court.

On September 12, 1994, council members Charles Robinson, Jr., Yvonne Blake and Carolyn Meacham filed a verified complaint in lieu of prerogative writs containing similar allegations to that filed by plaintiffs Patterson and Clark. Council members Robinson, Blake and Meacham collectively filed an *amicus curiae* brief in the Patterson/Clark matter. Therefore, on October 24, 1994, after having been advised by all counsel that there were no objections, the court entered an order consolidating the actions.

On October 18, 1994, the adjourned return date of the order to show cause, after hearing oral argument, the court held that it had sufficient facts before it to render a final judgment in this action.

This opinion memorializes the court's final judgment which was orally entered on the record of October 18.

## DISCUSSION

*N.J.S.A.* 40:103–5(82), which applies to the East Orange City Council, sets forth the following prerequisites for a quorum and the passage of legislation:

> A quorum of the city council required for the transaction of business shall consist of a majority of the whole number of the city council as provided by law and, unless otherwise required by law, all actions of the city council shall be by an affirmative vote conducted at a public meeting of at least a majority of the members of council then in office and not disqualified by law from voting thereon, provided however, in the absence of a quorum, any meeting of the city council may be adjourned without such affirmative vote. (emphasis added).

Plaintiffs argue that the plain language of *N.J.S.A.* 40:103–5(82) precludes Mayor Cooper from constituting part of a quorum and from voting as a member of the Council. Plaintiffs also point out, and defendants do not dispute, that nothing in the East Orange City Charter expressly permits the Mayor to vote. *See N.J.S.A.* 40:103–5(71)–40:103–5(127). However, defendants contend that *N.J.S.A.* 40A:9–132, enacted by the State Legislature as part of a broad reform of municipal government, permits the Mayor to be counted towards calculating a quorum and to vote where the Council is deadlocked.

> In every municipality, unless otherwise provided by law, if the governing body shall fail (a) to organize and elect a president or chairman at its annual meeting held for such purpose, (b) to fill any vacancy in office or position, (c) to adopt any resolution or ordinance, or (d) to take any other action whatsoever, by reason of a tie or insufficient vote among the members, the mayor shall vote in aid of said organization, the election of candidates, appointments of officers or others, adoption of resolutions or ordinances or the taking of any other action.
>
> [*N.J.S.A.* 40A:9–132].

Defendant Cooper also claims to have voted in reliance on a judgment order signed by the Honorable Reginald Stanton, J.S.C., on January 7, 1983, which concerned a deadlock of the Council over the election of a Council Chairman. The order provided in pertinent part that "in the event that the City Council deadlock in its determination to elect a Council Chairman or otherwise . . . ,

the Mayor shall be deemed to constitute a member for purposes of determining a quorum, and shall cast the deciding vote, all as set forth in *N.J.S.A.* 40A:9–132." (*Craig v. Faton*, L–1405–83, order of Jan. 7, 1983 at ¶ 8). The judgment order, which may have been entered due to agreements or stipulations of which this court is not aware, is not binding on this court.

Plaintiffs argue that *N.J.S.A.* 40:103–5(82), which plaintiffs characterize as a statute specifically addressing East Orange City Council voting criteria, preempts *N.J.S.A.* 40A:9–132, which they characterize as a general statute. *See State v. Dilley*, 48 *N.J.* 383, 226 *A.*2d 1 (1967) (explaining that a statute specifically dealing with a particular subject ordinarily controls, in contrast to a broad or undifferentiated statute generally encompassing the same area).

■ However, the principle that specific statutes trump general statutes applies only where the statutes conflict and where the specific statute was enacted after the general statute. *See State v. Gerald*, 113 *N.J.* 40, 83–84, 549 *A.*2d 792 (1988). *N.J.S.A.* 40A:9–132 was enacted after *N.J.S.A.* 40:103–5(82). Moreover, for the following reasons, the Court finds that sections 40A:9–132 and 40:103–5(82) do not conflict.

### The July 27, 1994 Meeting

■ The court's interpretation of the relationship between *N.J.S.A.* 40A:9–132 and 40:103–5(82) necessarily begins with examination of the statutes' plain language. *In re Schuman*, 114 *N.J.* 14, 25, 552 *A.*2d 602 (1989). Under the plain language of *N.J.S.A.* 40:103–5(82), a quorum of the City Council "shall consist of a majority of the whole number of the city council." That statute simply does not provide any other means by which a quorum may be calculated. For example, the statute does *not* state that a quorum of the city council shall consist of a majority of the whole number of the city council, or as otherwise provided by law.

Furthermore, nothing in the plain language of *N.J.S.A.* 40A:9–132 enables the Mayor to be counted in a quorum of the City Council. Rather, *N.J.S.A.* 40A:9–132 merely enables the Mayor to vote in certain situations. The clear meaning of *N.J.S.A.* 40:103–5(82) is that voting, or the transaction of any City Council business, take place only *after* a quorum, as defined by that section, is established. *N.J.S.A.* 40:103–5(82) ("[a] quorum of the City council *required for the transaction of business* shall consist of a majority of the whole number of the city council as provided by law") (emphasis added).

Therefore, since a majority of the whole number of the City Council of East Orange was not present on July 27, 1994, no quorum existed and any resolutions purportedly adopted at the meeting of July 27, 1994 are void *ab initio*.

Because the actions taken on July 27, 1994 were void *ab initio*, the court is not empowered to resurrect the legislation on any basis. However, the court will address defendants' contention that the City Council was unable to conduct important business and vote on time-sensitive legislation unless the Mayor was counted in calculating a quorum. Defendants liken the situation to that in *Smith v. Ghigliotty*, 219 *N.J.Super.* 231, 240, 530 *A.2d* 68 (Law Div.), *aff'd*, 219 *N.J.Super.* 11, 529 *A.2d* 1000 (App.Div.1987), and contend that plaintiffs come before the court with unclean hands because, by refusing to attend the July 27, 1994 meeting, they deliberately prevented a quorum from being convened. In *Ghigliotty*, the court ruled that the mayor of the Borough of Barnegat Light and certain Borough council members could not refuse to attend a meeting to preclude a quorum and to prevent a decision on a disputed item. The court explained:

> Defendants' decision to stay away contradicts th[e] strongly expressed legislative policy [of the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21,] and has no purpose other than to excuse them from having to demonstrate the validity of their reasoning in public. Clearly, the right of the public to witness the deliberative process is frustrated. The secrecy which the Open Public Meetings Act seeks to discourage is instead encouraged and faith in the government is undermined.
>
> [*Id.* at 239, 530 *A.2d* 68.]

The court ordered the defendants to attend a public meeting to be held in ten days. *Id.* at 240, 530 *A.*2d 68.

Under *Smith v. Ghigliotty,* defendants' remedy would have been to obtain an order compelling plaintiffs to attend a City Council meeting to be counted in a quorum. The court made this clear to defendants when the parties first appeared before the court in this matter on September 12, 1994. The parties represented that there would be a council meeting on the night of September 12, 1994. On the record, the court urged the parties to revisit the agenda of July 27, to avoid further delay of city business:

> [the City Council will] have a chance to vote on it tonight. . . . I think the appropriate way for this matter to be resolved is for there to be a City Council meeting or meetings and to vote these things either up or down. Let the public hear what the arguments are and let the public decide who's right and who's wrong. That's what we have the democratic process for.
>
> [Tr. of Sept. 12, 1994 at 34:2–20].

The court further emphasized that if plaintiffs refused to attend the meeting, it would entertain "a very fast application by someone to compel [attendance at a] meeting pursuant to the authority of [*Ghigliotty* ]." (Tr. of Sept. 12, 1994 at 33:10–12). Although plaintiffs attended the September 12 meeting, the City Council did not re-vote on the agenda of the July 27 meeting. Nor did defendants attempt to convene a special meeting to ratify the actions taken on July 27.

It is no secret that "gridlock," or the unwillingness and concomitant inability of elected bodies to advance legislation plagues every level of our government. The repeated deadlock, stalling, infighting and game-playing by which the members of the City of East Orange municipal government prevented a vote on the aforementioned legislation is an example of why the American public increasingly questions government's good faith in getting the business of governing done.

Although not necessary to its decision, the court will address plaintiffs' argument that the July 27 meeting should be voided due to alleged violations of the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21. The Open Public Meetings Act is prem-

ised on the vital need of the public for adequate notice of public body meetings. *N.J.S.A.* 10:4–7. Due to the importance of this public right, and to prevent future violations of the Act, the Court will consider whether an Open Public Meetings Act violation occurred in the instant case.

Plaintiffs maintain that Mayor Cooper did not provide forty-eight hour notice of the July 27, 1994, meeting to two newspapers, as required by *N.J.S.A.* 10:4–8(d)(2). Plaintiffs point out that although on Monday, July 25, 1994 the acting City Clerk faxed notice of the Wednesday, July 27 meeting to the *Star–Ledger* and the *East Orange Record*, it is the published and known policy of the *Star–Ledger* that notices received on a Monday will not be published until Thursday, and the *East Orange Record* is published only on Thursdays.

■ The notice sent to the *Star–Ledger* and the *East Orange Record* was inadequate. As the Chancery Division explained in *Worts v. Upper Township*, 176 *N.J.Super.* 78, 81, 422 *A.2d* 112 (Ch.Div.1980):

> When a public body sends meeting notices to newspapers for publication and, to the actual or readily ascertainable knowledge of that body, those newspapers cannot publish the notice at least 48 hours in advance of the meeting, there is no compliance with the Open Public Meetings Act. Logic demands this conclusion: were the opposite true, the purpose of the law would be circumvented easily.

This court cautions the parties to comply with *N.J.S.A.* 10:4–8(d) in the future by sending notice to the designated newspapers in time for the newspapers to publish the notice at least forty-eight hours before the meeting.

Because the court has based its ruling on the lack of a quorum, the court will not address plaintiffs' request that the resolutions adopted at the July 27 meeting be voided due to alleged conflicts Mayor Cooper possessed regarding those resolutions.

### The August 15, 1994 Meeting

■ Plaintiffs challenge the adoption of an ordinance designating the East Orange Economic Development Corporation as the Urban Enterprise Zone administrative body. This ordinance re-

ceived the votes of five City Council members plus the vote of Mayor Cooper, two City Council members having voted against the ordinance and three City Council members having abstained. Plaintiffs also challenge the approval of the issuance of $15 million dollars in tax notes for which five City Council members, together with Mayor Cooper, voted affirmatively, four City Council members voting against and one City Council member abstaining from voting. At the August 15, 1994 meeting, it is clear that the Mayor voted in accordance with *N.J.S.A.* 40A:9–132 and therefore the two matters being challenged were validly approved.

A fundamental principle of statutory construction is that "statutes ... relat[ing] to the same matter or subject must be read *in pari materia.*" *Clifton v. Passaic County Bd. of Taxation,* 28 *N.J.* 411, 421, 147 *A.*2d 1 (1958). This principle of statutory construction requires that such statutes "are to be construed together as a unitary and harmonious whole, in order that each may be fully effective." *Id.,* 28 *N.J.* at 421, 147 *A.*2d 1 (citations omitted). The Supreme Court has explained that "[t]his rule ... derives from the reasonable presumption that legislatures are aware of relevant prior legislation." *Mimkon v. Ford,* 66 *N.J.* 426, 433, 332 *A.*2d 199 (1975) (citations omitted). Both statutes at issue, section 40:103–5(82) specifically and 40A:9–132 generally, concern the process by which legislation is passed in the City of East Orange. Therefore, the statutes should be read *in pari materia.*

The plain language of *N.J.S.A.* 40:103–5(82) states that:

unless otherwise required by law, all actions of the city council shall be by an affirmative vote conducted at a public meeting of at least a majority of the members of council then in office and not disqualified from voting thereon[ ] ... (emphasis added).

The court finds that the underlined language, "unless otherwise required by law," applies to *N.J.S.A.* 40A:9–132, which mandates that:

[i]n every municipality, unless otherwise provided by law, if the governing body shall fail . . to adopt any resolution or ordinance or ... to take any other action whatsoever, by reason of a tie or insufficient vote among the members, the mayor

*shall* vote in aid of said organization, the elections of candidates, appointments of officers or others, adoption of resolutions or ordinances or the taking of any other action.

[emphasis added].

Therefore, reading the sections together, the Mayor is authorized to vote where there is a tie or insufficient vote among the council members.

■ Where a statute requires "a specific, fixed number of actual affirmative votes for a majority," as does *N.J.S.A.* 40:103–5(82), abstentions are considered negative votes. *See Garner v. Mountainside Bd. of Adj.*, 212 *N.J.Super.* 417, 515 *A.2d* 280 (Law Div.1986). Because there were insufficient votes to adopt the disputed legislative items, the Mayor was entitled to vote to ensure their ratification.

## *CONCLUSION*

For the afore-mentioned reasons, the actions taken at the July 27, 1994 City Council meeting are void and the actions taken at the August 15, 1994 meeting are valid.