71 A.3d 206

CORY BOOKER, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF NEWARK; ROBERT MARASCO, IN HIS OFFICIAL CAPACITY AS CITY CLERK OF THE CITY OF NEWARK; ANIBAL RAMOS, JR., IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK; AUGUSTO AMADOR, IN HIS OFFICIAL CAPACITY OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK; CARLOS M. GONZALEZ, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK; LUIS A. QUINTANA, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK; AND SHANIQUE DAVIS SPEIGHT, IN HER CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, PLAINTIFFS–APPELLANTS, v. RONALD C. RICE, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK; RAS J. BARAKA, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK; MILDRED C. CRUMP, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK; AND DARRIN S. SHARIF, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 21, 2013—Decided July 5, 2013.

Before Judges FISHER, ALVAREZ and ST. JOHN.

*Vito A. Gagliardi, Jr.,* argued the cause for appellants (*Porzio, Bromberg & Newman, P.C.,* attorneys; *Mr. Gagliardi,* of counsel; *Mr. Gagliardi, Frank A. Custode* and *Okechi C. Ogbuokiri,* on the brief).

*Robert T. Pickett* argued the cause for respondents (*Pickett & Craig,* attorneys; *Mr. Pickett,* of counsel; *Mr. Pickett* and *Lauren M. Craig,* on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider whether a vacancy on the Newark Municipal Council was validly filled in a manner consistent with the Municipal Vacancy Law, *N.J.S.A.* 40A:16–1 to –23, when, of the eight remaining councilmembers, four voted "yes," two voted "no," and two abstained. The affirmative voters took the position that this created a four-four deadlock, which, in their view, authorized the mayor to vote, pursuant to *N.J.S.A.* 40A:16–8; the mayor

voted in favor of plaintiff Shanique Davis Speight. Because an abstention in this context could not be counted as a "no" vote, we conclude, as did the trial judge, that there was no tie, the mayor was not authorized to vote and, consequently, the Council failed to fill the vacancy, leaving the matter to Newark's voters at the next election.

The facts are relatively simple and undisputed. On November 15, 2012, Newark Municipal Councilmember Donald M. Payne, Jr. resigned from the Council due to his election to the United States Congress. Pursuant to the Faulkner Act, *N.J.S.A.* 40:69A–1 to – 210, Newark maintains a mayor-council form of government, with nine council members and a mayor. On November 20, 2012, with the eight remaining members present, the Council attempted to appoint Congressman Payne's successor. *N.J.S.A.* 40A:16–7 requires that a majority of remaining council members—that is, at least five members—approve of a replacement to fill the vacancy.

Councilmember Ronald Rice left the meeting, and Ms. Speight received four "yes" votes [1] and 3 "no" votes.[2] The Council regarded Councilman Rice's departure as a "no" vote, which they believed created a four-four tie. Based on this perceived tie—and only because of this perceived tie, *see N.J.S.A.* 40A:16–8 (declaring that a mayor may vote "to fill a vacancy in the membership of a governing body only in the case of a tie vote")—Mayor Cory Booker voted in favor of Ms. Speight.

Mayor Booker, City Clerk Robert Marasco, Ms. Speight and Councilmembers Ramos, Amador, Gonzalez and Quintana (hereafter "plaintiffs") filed a verified complaint and obtained an order requiring Councilmembers Rice, Baraka, Crump and Sharif (hereafter "defendants") to show cause why the court should not enter a declaratory judgment confirming Ms. Speight's appointment to

---

[1] From Councilmembers Anibal Ramos, Augusto Amador, Carlos Gonzalez and Luis Quintana.

[2] From Councilmembers Ras Baraka, Mildred Crump and Darrin Sharif.

the Council or, in the alternative, why a mandatory injunction should not be issued compelling defendants to attend and vote at a special council meeting. In response, defendants sought temporary restraints and moved to invalidate the appointment. With the parties' consent and without waiver of their legal contentions, Judge Dennis F. Carey, III, entered an interim order compelling defendants to appear at a special meeting to vote again.

The special council meeting was held on December 5, 2012; all eight remaining councilmembers attended. Ms. Speight received the same four "yes" votes. Councilmembers Baraka and Crump again voted "no," and Councilmen Rice and Sharif abstained. Mayor Booker voted to break this ostensible tie in favor of placing Ms. Speight on the Council.

Judge Carey heard further argument on December 11, 2012, and, on December 17, 2012, rendered a thorough written decision. Judge Carey found that the Newark Council's rules of practice recognized that an abstention is neither a "yes" nor a "no" vote and that Newark's internal rules were not inconsistent with statutory or common law principles. Consequently, Judge Carey concluded there was no tie that would allow the mayor to cast a vote and that Ms. Speight did not receive the five votes required by law to fill the vacancy. We agree and affirm.

 The Municipal Vacancy Law permits a governing body's "remaining members," *N.J.S.A.* 40A:16–7, to fill a vacancy within thirty days of the occurrence of a vacancy, *N.J.S.A.* 40A:16–12. The remaining members are not required to act; if they are unable to agree or if they choose not to fill the vacancy, the seat remains vacant until filled by the voters. *N.J.S.A.* 40A:16–13.

To fill a vacancy, at least five members were required to vote in favor of a nominee. Ms. Speight received only four affirmative votes. The only way that Ms. Speight could be validly seated to fill the vacancy left by Congressman Payne was through the recognition of a deadlock and, with such a tie, the affirmative vote of Mayor Booker. *See N.J.S.A.* 40A:16–8 (declaring that "a mayor

shall be permitted to vote to fill a vacancy in the membership of a governing body only in the case of a tie"). And the only conceivable way the Council vote could be viewed as constituting a tie is if Councilmembers Rice and Sharif's abstentions may be viewed as "no" votes.[3]

To determine the meaning of the Councilmembers' abstentions, we are directed by *N.J.S.A.* 40:69A–180(a), which authorizes a governing body to "determine its own rules of procedure, not inconsistent with ordinance or statute," to consider the application of Newark's rules of procedure. *See also N.J.S.A.* 40:69A–36(f). Rule XVI of the Newark Council's rules declares:

> Upon any roll call there shall be no discussion or explanation given by any Council Member voting, and he shall vote "yes" or "no" unless he shall first receive special permission from a majority of the Municipal Council to explain his vote. *A Council Member may abstain* from voting on any matter, *such abstention shall not be counted as a yes or no vote* but shall be recorded in the minutes.
> [Emphasis added]

Application of the clear and unambiguous language of this rule precludes a finding that the Council was deadlocked when four members voted "yes," two members voted "no," and two members abstained.

In response, plaintiffs argue that Rule XVI is, on its face, "arbitrary, capricious and unreasonable" because it disregards common law principles and statutory authority and because, in their view, its application here permits the "manipulat[ion] [of] the voting process and [the] defy[ing] [of] the statutory scheme for breaking a tie vote." We reject these contentions.

There is nothing arbitrary or unreasonable about Rule XVI because it is consistent with *N.J.S.A.* 40:69A–180(a), which authorizes such rules of procedure so long as they are "not inconsistent with ordinance or statute." Plaintiffs have not referred to an ordinance or statute that would foreclose a council from adopting a rule that views an abstention as neither a "yes" or a "no" vote.

---

[3] It certainly has not been argued that the abstentions should have been counted as "yes" votes.

Instead, they refer to our rather nuanced and confusing jurisprudence regarding the meaning of an abstention in various settings. Because no clear or definitive rule suggesting the treatment of an abstention can be ascertained from the cases, we reject the argument that Newark's Rule XVI is "inconsistent" with recognized law.[4]

Historically, our courts acknowledged a general rule for treating abstentions as affirmative votes when a majority vote of a governing body was required for enactment of a measure. *See Kozusko v. Garretson,* 102 *N.J.L.* 508, 509–10, 134 *A.* 614 (Sup.Ct.1926) (recognizing that "when in a parliamentary body a majority vote suffices for effective enactment, and some vote aye and the others remain silent, they are taken as voting in the affirmative"); *Mount v. Parker,* 32 *N.J.L.* 341, 342 (Sup.Ct.1867) (concluding that "where no specified number of votes is required, but a majority of a board regularly convened are entitled to act, a person declining to vote is to be considered as assenting to the votes of those who do"). But, as the court observed in *Kozusko,* when non-voters do not merely remain silent but instead "express[ ] themselves" as not "wish[ing] to be counted as in favor," then the "common sense of the matter seems to be that" they "should be recorded in the negative." 102 *N.J.L.* at 510, 134 *A.* 614. *See also Aurentz v. Planning Bd., Twp. of Little Egg Harbor,* 171 *N.J.Super.* 135, 139, 408 *A.*2d 140 (Law Div.1979); *Abels v. McKeen,* 18 *N.J. Eq.* 462, 465 (Ch.1867).

Exceptions to this general approach have been recognized. For example, when "abstention is due to a disqualifying personal or financial interest," courts have held that the abstention is not considered "acquiesce[nce] in the majority" and should not be considered an affirmative vote. *Aurentz, supra,* 171 *N.J.Super.* at

---

4 We could end this discussion by recognizing that *N.J.S.A.* 40:69A–180(a) does not preclude a council's adoption of a rule of practice that is inconsistent with the common law, only those rules that are inconsistent with "ordinance or statute." We proceed with an analysis of the case law, however, for the sake of completeness.

140, 408 *A*.2d 140; *see also Quinn v. Sea Isle City,* 77 *N.J.L.* 428, 429, 71 *A.* 1118 (Sup.Ct.1909); *Garner v. Mountainside Bd. of Adjust.,* 212 *N.J.Super.* 417, 426, 515 *A*.2d 280 (Law Div.1986). Additionally, it has been held that when a statute requires a "specific, fixed number of actual affirmative votes for a majority," abstentions should be regarded as negative votes. *Patterson v. Cooper,* 294 *N.J.Super.* 6, 18, 682 *A*.2d 266 (Law Div.1994) (citing *Garner, supra,* 212 *N.J.Super.* at 425, 515 *A*.2d 280).

Our courts have, at times, also interpreted abstentions as negative votes when the record suggests that abstention was meant to intentionally frustrate the voting process. In *Kossyk v. Light,* 157 *N.J.Super.* 338, 339–40, 384 *A*.2d 1111 (App.Div.1978)—upon which plaintiffs greatly rely—we held that a quorum existed despite councilmembers' departure from the meeting for the purpose of preventing a quorum to fill a vacancy, finding that "orderly government should not be frustrated by whim and the device of council persons absenting themselves from a position to which they were elected and to the attendance on which they had a solemn duty." In *Smith v. Ghigliotty,* 219 *N.J.Super.* 231, 233, 239–40, 530 *A*.2d 68 (Law Div.), *aff'd o.b.,* 219 *N.J.Super.* 11, 529 *A*.2d 1000 (App.Div.1987), certain councilmembers refused to attend a special meeting to fill a council vacancy; the trial judge relied on *Kossyk* and directed those members to attend a public meeting by declaring that public officials "disserve[ ] [the] public trust" when they intentionally refrain from attending a meeting "with the express intent of denying the governing body and the public the right to meet and discuss a critical public issue."

One trial judge, however, offered a common sense rejection of this approach in all instances, recognizing that the judicial role is not to analyze the rationale for the councilmember's position and that an abstention should not be viewed as either a "yes" or "no" vote. In *Mann v. Housing Authority of Paterson,* 20 *N.J.Super.* 276, 279, 89 *A*.2d 725 (Law Div.1952), when considering whether the abstentions of three of six commissioners in a vote should be counted as affirmative votes, the court held that

> mere consent to the vote of the majority by one who abstains from voting is not an affirmative vote, as it is not an expression of the choice or preference of the voter. As six commissioners were present at the meeting, passage of the resolutions clearly required four affirmative votes. But three were recorded, so the resolutions failed of legal passage and are, therefore, wholly invalid.

In the final analysis, very few clear patterns can be discerned from these various decisions. Indeed, the New Jersey Law Revision Commission recently recognized that the current state of the law is "complicated" and has sought to clarify, through currently pending legislation, that abstentions should be treated as neither "yes" nor "no" votes because, "[c]urrently, under New Jersey common law, there are circumstances where abstention is interpreted as either a 'yes' or a 'no' vote," and in reality, "[a] person who abstains does not intend to cast any vote, affirmative or negative." John M. Cannel, Executive Director, *Final Report Relating to Effect of Abstentions*, NEW JERSEY LAW REVISION COMMISSION (Apr. 2011).[5]

This brief analysis of our common law demonstrates there is very little clarity or consistency in the judicial treatment of abstentions by members of municipal governing bodies. Accordingly, plaintiffs' argument that Newark's Rule XVI should not be applied because it is contrary to common law is unpersuasive.[6] More importantly, because Rule XVI does not conflict with any statutory authority—neither the Faulkner Act nor the Municipal Vacancy Law addresses the legal significance of an abstention—it does not violate *N.J.S.A.* 40:69A–180(a). As a result, Judge Carey properly concluded that Rule XVI was dispositive and that the rule compelled a finding that the votes cast by Councilmembers Rice and Sharif were not either "yes" or "no" votes and, therefore, did not create a deadlock to be broken by Mayor Booker. We,

---

[5] *http://www.lawrev.state.nj.us/abstentions/abstentionFR042811.doc*

[6] As noted earlier, this argument is based on a faulty premise, because the common law is irrelevant in determining the legitimacy of a governing body's rule of procedure.

therefore, agree with the conclusion reached by Judge Carey in his comprehensive and thoughtful opinion.

We would be remiss, however, if we did not comment on plaintiffs' accusation that Councilmember Rice's earlier abstention, and his and Councilmember Sharif's later abstentions, were "manipulative" or designed to "turn[ ] the voting process upside down to carry out [a] political agenda." To the extent our decision in *Kossyk, supra,* 157 *N.J.Super.* at 340, 384 *A.*2d 1111, and the trial court decision in *Smith, supra,* 219 *N.J.Super.* at 235, 530 *A.*2d 68, which we affirmed, *Smith, supra,* 219 *N.J.Super.* at 11–12, 529 *A.*2d 1000, may be read to support plaintiffs' view, we reject them when viewed in this context. As we have emphasized, the questions before us are informed by the fact that the remaining councilmembers were not required by law to fill the vacancy; they were only authorized to do so in their discretion. *N.J.S.A.* 40A:16–12 (declaring that ". . . the governing body *may,* within 30 days of the occurrence of the vacancy, appoint a successor to fill the vacancy . . .") (emphasis added). The failure of the remaining members to exercise their discretion to fill a vacancy does not arouse the spectre of an "impotent, stalemated government," *see Kossyk, supra,* 157 *N.J.Super.* at 340, 384 *A.*2d 1111, and action taken by a councilmember in this particular circumstance is not, as plaintiffs argue, per se "whim[sical]" or purposefully destructive of the political process, *see Smith, supra,* 219 *N.J.Super.* at 235, 530 *A.*2d 68. Just as we must assume plaintiffs felt justified in voting "yes," and other members felt justified in voting "no," the abstentions of Councilmembers Rice and Sharif must be similarly assumed to represent a principled approach to the matter at hand. The point plaintiffs seem to miss is that there were not only two choices placed before the Council—for or against Ms. Speight— when the vacancy occurred; councilmembers were also legitimately entitled to choose not to fill the vacancy and leave the question to be decided by the people of Newark at the next election as provided by statute. In the circumstances presented by Congressman Payne's resignation, councilmembers could only express

a desire to leave the seat vacant by either absenting themselves from the meeting or abstaining. On this record, we must assume that this was the principled basis for the abstentions; to the extent *Kossyk* and *Smith* would suggest that an abstention in this setting constitutes a breach of councilmembers' "solemn duty," *Kossyk, supra,* 157 *N.J.Super.* at 340, 384 *A.*2d 1111, we respectfully disagree. If abstaining in this circumstance is manipulative or contrary to the people's best interests, then it is the Legislature's duty or the voters' prerogative—not ours—to provide a remedy.

Affirmed.